Jacob Markowitz, J.
Although the principle is so fundamental in a democratic society as to be asbolutely compelling without the sanction of positive law, courts have long recognized that ‘ ‘ The right to make a living is among the greatest of human rights ” (Schlesinger v. City of Atlanta, 161 Ga. 148, 159; see, also, Allgeyer v. Louisiana, 165 U. S. 578, 589; Crowley v. Christensen, 137 U. S. 86, 89; Matter of Jacobs, 98 N. Y. 98, 106). In this article 78 proceeding the petitioner claims that his il right to make a living ” as a tow truck driver has been denied to him by the arbitrary and capricious refusal of the Police Commissioner of the City of New York to grant him the license required for that occupation.
*152 In April, 1961 the petitioner applied to the respondent Police Commissioner for a license as a tow truck driver pursuant to section 436-7.0 of the Administrative Code of the City of New York. In early May he was informed by letter that he was “ entitled to a hearing in this matter ”, if he so desired, and, after having requested a hearing, it was scheduled for the latter part of May.
The petitioner and his attorney appeared before a Police Department hearing officer, according to schedule, on May 23. At that time, however, the petitioner himself was not questioned, nor was he allowed to testify on his own behalf or present any other form of evidence as to his habits and character. In early July, not having been notified of any decision in the matter, the petitioner’s attorney called the Police Department’s Division of Licenses and was informed that there was no record of a hearing having been held and that another hearing would be necessary.
A second hearing was scheduled for July 18 at which time both the petitioner and his attorney again appeared before a hearing officer only to find that this hearing officer, like the first hearing officer, had no interest in hearing the evidence they were prepared to offer. Instead they were ‘ ‘ informed that it was the policy of the Police Department to refuse to grant a license when an applicant had been convicted of a felony and that [they] should request a review of this determination.”
No stenographic record or mechanical recording was made of this second purported hearing and, on July 31, the petitioner was informed by letter that his application for a license was disapproved ‘ ‘ due to the criminal record of the applicant. ’ ’ Upon making application for an administrative review of the hearing officer’s decision, the petitioner was informed that his complete record had been “thoroughly reviewed” and that no reason was found to alter the decision previously rendered. He thereupon brought the present article 78 proceeding.
It is undisputed that the petitioner was discharged from the United States Navy with a bad conduct discharge in 1946 and that, in that same year, he pleaded guilty to criminally carrying a concealed loaded pistol, a felony. The question presented for review is whether a refusal to grant a license based solely on these facts and without petitioner having been offered a real opportunity to be heard accords with principles of due process.
Until the turn of the present century, there were few occupations which required a license or permit and these were restricted, for the most part, to the professions. But by 1952 the Council of State Governments reported that more than 80 occupations had been licensed by various States (Occupational *153 Licensing Legislation in the States [1952]), 7-8), including junk dealers, funeral directors, and blind vendors. One commentator remarked in 1956 that *1 Occupational licensing has gone too far” (Gellhorn, Individual Freedom and Governmental Restraints [1956] p. 144) and, whether there is complete agreement with this judgment or not, a mere glance at the index notation “ Licenses ” in the compilation of New York State statutes or the Administrative Code of the City of New York proves that it is a judgment which merits serious attention.
Whatever the wisdom of such extensive licensing, however, there is no doubt of the general power of State to subject the pursuit of any lawful trade or occupation 11 to such reasonable conditions as may be deemed by the governing authority * * * essential to the safety, health, peace, good order and morals of the community” (Crowley v. Christensen, 137 U. S. 86, 89, supra). Even though the extent to which licensing of occupations has grown in recent years raises no doubt of the lawful character of licensing in general or of the legality of any particular licensing statute, it, nevertheless, does and should raise the concern of all who are connected with licensing— Legislatures, courts as well as administrators — that the system be conducted with all propriety and fairness. When hundreds of thousands of ordinary citizens of the State require a license even for the performance of ordinary jobs, the requirement must be carefully scrutinized to insure that administrative haste, callousness or unreasonableness does not deprive anyone of his fundamental “ right to make a living ” (Schlesinger v. City of Atlanta, 161 Ga. 148, 159, supra).
A review of the determination before me in this proceeding raises two distinct doubts concerning it. In the first place, I am persuaded that there was lacking in the Police Department’s action that “ procedural fairness and regularity [which] are of the indispensable essence of liberty” (Shaughnessy v. Mezei, 345 U. S. 206, Jackson, J., dissenting, p. 224). And, secondly, although it is not necessary that I decide the question, I am of the opinion that the Police Commissioner’s determination is not supported by substantial evidence and is, therefore, arbitrary and capricious.
¡The petitioner was plainly denied his right to work as a tow truck driver without the essential rudiments of a hearing. The New York Court of Appeals, in Matter of Hecht v. Monaghan (307 N. Y. 461), most recently described the hearing procedure requisite to due process in the case of quasi-judicial administrative functions in this manner (307 N. Y. 470): “ Technical legal rules of evidence and procedure may be disregarded. Never *154 theless, no essential element of a fair trial can be dispensed with unless waived. That means, among other things, that the party whose rights are being determined must be fully apprised of the claims of the opposing party and of the evidence to be considered, and must be given the opportunity to cross-examine witnesses, to inspect documents and to offer evidence in explanation or rebuttal ’ \
Although the petitioner in this proceeding was informed that he was ‘1 entitled to a hearing in this matter ’ ’, and although 1 ‘ hearings ’ ’ were twice scheduled, and although he appeared before ‘1 hearing officers ’ ’ on two occasions, he never had an actual hearing because the ££ hearing officers ’ ’ would never listen to what he had to say. He was informed of the facts upon which his application was going to be denied but he was never “allowed to offer evidence in rebuttal” (Matter of Hecht v. Monaghan, 307 N. Y. 461, 470, supra). Under these circumstances, it is necessary to conclude that due process was violated in the license denial involved herein because the petitioner was spoken to but never listened to, because he was allowd to hear the charges against him but no one would hear his answer to them.
The Police Commissioner candidly admits that a hearing as defined in the case of Matter of Hecht v. Monaghan (307 N. Y. 461, supra) was never afforded the petitioner. His answer to the contention that failure to afford a hearing is violative of due process is, however, that£ ‘ there is no right to a hearing before an application is denied, unless it is specifically required by statute.” The Police Commissioner would distinguish between the procedures required in license revocation proceedings from those required in license applications and would insist that due process does not require a hearing in the latter instance.
The simple answer to the Police Commissioner’s argument in this case is that, whatever the requirements of due process under other circumstances, it is shocking to the sense of fundamental fairness for a public officer to promise a hearing and to subsequently deny it or to so limit it as to make it a sham. This petitioner was informed in writing that he was “ entitled to a hearing ” and hearings were actually scheduled before hearing officers. It befits neither the public nature of the commissioner’s administrative office nor the primary nature of the rights he is regulating, to give an applicant for a license every reason to believe he will be heard and then to deny such hearing. The law will not tolerate such a disregard of propriety in a public officer. Having made the promise, the Police Commissioner should be held to the performance.
*155 Even, however, were the express promise of a hearing to be disregarded, I would nevertheless conclude that failure to afford one in this case was violative of due process. It may-well have once been the law in this State that, as regards procedural requirements, the issuance of a license was to be distinguished from the revocation of a license (see e.g., Matter of Hood Restaurant v. Wallander, 186 Misc. 254, 256), but I am of the opinion that this is no longer the law.'
The old rule was based on the distinction between a privilege and a right. An application for a license was considered to involve solely a privilege which could be denied without regard to procedural niceties. (See Davis, Administrative Law [1958], p. 497.) In the past, because there were few occupations which were licensed and because they were considered of a special or unusual character, it was possibly appropriate to denominate them all privileges and thereby limit the procedural protection afforded an applicant. In our day, however,' as I have already indicated, licensing extends to a very large number of callings, including the most mundane. And, although there are possibly some instances in which it is still proper to regard the license as a privilege in terms of the required procedure, it is hardly reasonable to regard them all as such. Certainly the opportunity to work at an ordinary occupation, such as a tow truck driver, where that occupation is licensed, is of such importance to the individual that it bespeaks indifference to deprive him of due process protection by calling the license a privilege rather than a right.
Jn fact, the tendency of some recent cases in this area, as well as of some of the older cases, is to establish that “ The basic principle governing opportunity to be heard — that a trial type of hearing is required on issues of adjudicative fact when important interests are at stake * * * — is fully applicable to denying * * * (licenses of various kinds ” (Davis, Administrative Law [1958], supra, p. 493). Thus, in Goldsmith v. Board of Tax Appeals (270 U. S. 117), an accountant had applied for admission to practice before a Government board and had claimed that permission was refused without affording him the opportunity to be heard. Although the case was decided on the ground that the applicant had never asked for a hearing, the Supreme Court of the United States declared that the applicant “ should not have been rejected upon charges of his unfitness without giving him an opportunity by notice for hearing and answer ” (270 U. S. 123). And in the recent case of Schware v. Board of Bar Examiners (353 U. S. 232), involving an applicant for admission to the Bar, the same court declared that, “A State *156 cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment” (353 U. S. 238-239).
In this State the two most recent Court of Appeals cases in the area demonstrate that that court rejects a single rule applicable to all licenses and instead looks to the character of the individual license to determine what procedural requirements are appropriate to it. In Matter of Fink v. Cole (1 N Y 2d 48), the license at issue was one to engage in the business of horse racing and the court refused to honor a due process challenge on the ground of the failure to afford a hearing. Although the court clearly indicated that the license involved was a privilege and that no hearing was required, the strength of the holding was diminished by the fact that considerable testimony was taken in a proceeding initiated by the petitioner and by the fact that he had been represented by counsel before the administrative body and had argued his case at length.
Matter of Perpente v. Moss (293 N. Y. 325) presented the issue more squarely. There a license to conduct an employment agency was involved and the refusal to grant a license was overturned on the ground that no hearing had been held. The court declared (293 N. Y. 329): “ Though formal hearings and formal findings may not be required, a license may not be refused on the ground that the applicant ‘ is not a person of good character ’ unless the applicant has a fair opportunity to meet a challenge to his good character and unless the court of review is apprised of the basis of the finding against the applicant. The procedure of the Commissioner [of Licenses] must conform to recognized standards of fairness and a record must be made which permits a review of the action of the Commissioner by the court.”
Thus, the Court of Appeals deals with licenses according to the character of the occupation or business being licensed. And whereas an application to be licensed to conduct horse racing as a business is regarded as a privilege, insofar as due process requisites are concerned, a license to conduct an employment agency involves a right and requires a hearing. The more important the license to the well being of the individual and to the needs of our community, the more reason there is to regard it as a right attended by constitutional protection.
In terms of this formula, the opportunity to work as a tow truck driver — the occupation involved here — must be considered a right rather than a privilege. To be sure an applicant for a tow truck driver’s license can seek other employment, *157 but because of the importance to the individual of the occupation involved and because the requirement of such a license affects numerous people, an applicant cannot be rejected without affording him procedural fairness. Imposing such a restriction on the granting of licenses does not mean, of course, that an applicant may not be refused; it means that he can be refused only after affording him an opportunity to be heard.
Having decided that the determination of the Police Commissioner must be revoked because of his failure to afford the petitioner a hearing, it is unnecessary to reach the substantive issue raised in this proceeding. Because of the public significance of the question, however, I feel impelled to direct attention to it.
The Police Commissioner reads the recent case of Matter of Barton Trucking Corp. v. O’Connell (7 N Y 2d 299) to warrant the conclusion that, despite the fact this licensing statute mandates no such result, the petitioner’s commission of a felony 15 years ago itself provides a sufficient basis for the denial of his application for a license as a tow truck driver. I regard this conclusion as mistaken and I am of the opinion that it does not find vindication in the Barton Trucking case.
That case involved public cart licenses, and the issue was not whether a hearing was required but rather whether the Commissioner of Licenses had implied ‘ ‘ power to withhold a license for good cause ” (7 N Y 2d 307). It is true, of course, that, after finding that the Commissioner had such implied power, the court went on to decide that the Commissioner’s refusal to grant a license on the sole ground that an officer of the applicant corporation had been convicted of a felony 20 years previously was not arbitrary or capricious (7 N Y 2d 313). This latter aspect of the decision, however, does not give carte blanche for the refusal of all licenses because of all past felony convictions.
The majority opinion in the Barton Trucking case clearly indicates that the court’s conclusion there as to the significance of a past conviction was limited to the relation of the particular conviction involved to the purpose of the particular licensing statute involved. Thus the court alluded on more than one occasion to the “ nature and locale ” of the conviction — it was for extortion in the garment trucking industry — and to “ the context of the apparent purpose of the licensing statute ’ ’, the prevention of price gouging in the garment industry (7 N Y 2d 313). The opinion specifically calls attention to the fact that “ the conviction was not for criminal activities remote from the licensed business but was linked to the very industry in which *158 petitioner seeks licenses” (7 N Y 2d 313). And the court’s conclusion expressly encompasses the limitation suggested: ‘ ‘ When the nature and locale of this conviction are viewed in the context of the apparent purpose of the licensing statute and the industry in which the petitioner seeks to operate its trucks, it cannot be said as a matter of law that the Commissioner acted arbitrarily or capriciously in refusing to issue the licenses ’ ’ (7 NY 2d 313).
Considering the very wide variety of occupations which are licensed and considering that these include many unskilled or semi-skilled jobs — facts I have pointed out above — it would be a most unfortunate and most unjust social policy to prevent anyone who had ever been convicted of a felony from engaging in every licensed occupation. Such a policy would defeat the recognized and highly laudable principles of rehabilitation and instead it could easily act as a spur to renewed criminal activity. Such a policy would also represent, in my opinion, a cruel extension of punishment far beyond the prison gates and far beyond the duration of punishment which is given legislative mandate.
This does not mean, of course, that an administrator, in deciding a license application under a licensing statute which is silent on the question, may not take a past conviction into account as a very important factor, or that, on some occasions, he may not consider it conclusive, as was done in the Barton Trucking case. It only means that, in most instances, an administrator should consider the nature of the crime and the nature of the license and should give a license applicant the opportunity to prove that he has outlived his antisocial habits and that he can honestly and conscientiously perform the occupation in question. Any other practice “may simply close every door of hope to a person once sentenced for a crime, by blocking all chances of his becoming rehabilitated in a vocation for which he may be suited” (Gellhorn, Individual Freedom and Governmental Eestraints [1956], supra, p. 128). Any other practice may “‘make permanent civil disqualification a part of punishment’” (Gellhorn, op. cit., p. 128; Freund, Administrative Powers over Persons and Property [1928], p. 128), an end totally inconsistent with the current enlightened trend of our penology.
Applying these principles to the license here in question, it seems abundantly clear on the record before me that the petitioner should have been granted a tow truck driver’s license. To be sure, he pleaded guilty to a felony. But the crime involved here — carrying a concealed loaded pistol — unlike that in the *159 Barton Trucking case (7 N Y 2d 299, supra), was, to use the language of the court in that case, ‘ ‘ remote from the licensed business ”. Furthermore, the “ nature and locale ” of the crime when ‘ ‘ viewed in the context of the apparent purpose of the licensing statute ” (7 N Y 2d 313) here at issue — the protection of the public from fraud, exorbitant rates and other overreaching conduct — is not such as to raise the grave doubts involved in the Barton Trucking case as to the license applicant’s capacity to fulfill the obligations of the license.
Turning next to the applicant’s character at the present time. The crime he committed took place 15 years ago and since that time he has a worthy and unblemished record of employment in the automobile servicing field — the very field to which the license he seeks relates. Three of his employers, including his present one, have, in fact, submitted affidavits vouching that he is “ a conscientious worker, and a responsible and honest person ’ ’. Furthermore, the petitioner was recently married and has adopted a child. The very fact that he was permitted to adopt a child is certainly strong evidence of good moral character.
On the basis of all of the facts before me, the petitioner seems to have made the type of readjustment to the ways of our society which our law strives to promote. This being so, the denial of a license represents a grave personal injustice as well as an affront to the social principle of rehabilitation; the denial makes it virtually impossible for the petitioner to effectively continue his employment, striking a blow at his rehabilitation. Because the Police Commissioner never considered all of the facts in the record before me, rather than to order the granting of the license, I am constrained merely to annul his denial and to direct him to reconsider the application and to order an appropriate departmental hearing on it forthwith.