CITY OF DETROIT *v.* MASHLAKJIAN

1. Licenses—Renewal—Hearing.
   A licensing authority issuing occupational licenses may not refuse, revoke or suspend a license without informing the applicant or licensee of the reasons for the proposed negative action and giving him an opportunity to be heard.

2. Same—Revocation—Refusal to Renew.
   A licensee who sought a renewal of a license to run a long-established business had a right to suppose that his application was still pending until he heard from the licensor city and to continue to operate his long-established business until the city, in accordance with ordinance requirements, took steps to revoke his license.

3. Same—Renewal—Status Quo.
   Filing application by licensee for renewal of city occupational license has effect of preserving *status quo* until acted upon by city as required by law.

Appeal from Recorder's Court of Detroit, Wood (Andrew C.), J. Submitted Division 1 March 8,

Reference for Points in Headnotes
[1–3] 33 Am Jur, Licenses § 67 *et seq.*

1968, at Detroit.   (Docket No. 1,715.)   Decided December 24, 1968.

George Mashlakjian was convicted of operating a public lodging house without a license.   Defendant appeals.   Reversed.

*Robert Reese,* Corporation Counsel, and *Robert D. McClear,* Assistant Corporation Counsel, for plaintiff.

*Albert Best,* for defendant.

LEVIN, J.   The defendant George Mashlakjian appeals his conviction of operating a public lodging house without a license.   (Detroit Ord 860–E, as amended by Ord 654–F [Municipal Code § 29–2–1, *et seq.*].)   The defendant's hotel is located in downtown Detroit.   It is an inexpensive hotel catering to working men.   Its owner Harry Kemsuzian testified he operated it from 1939 to 1961 and annually obtained a license authorizing him to do so from the city of Detroit.   In 1961 Kemsuzian leased the hotel to the defendant George Mashlakjian.

Mashlakjian testified that he obtained a license for the years 1961–1962 and 1962–1963 without difficulty.   The license obtained for the year 1962–1963 expired June 30, 1963.   A Detroit police officer testified that he took an application for a renewal of that license from Mashlakjian on May 15, 1963, 1–1/2 months before, by its terms, it was due to expire.

Two years later, on May 20, 1965, Mashlakjian was ticketed for operating without a license.   At the time the ticket was issued, no action had been taken by the city on his renewal application for 1963–1964.   Mashlakjian did not apply for a renewal for the license year in which the ticket was issued (1964–

1965) until the day after the ticket was issued, *i.e.*, May 21, 1965. The police officer testified that Mashlakjian's May 21, 1965, application for a 1964–1965 license and the $55 filing fee paid therewith were "accepted." When asked whether that application was pending, the police officer responded that as far as his office was concerned it had not been "refused."

At the time of trial, July 23, 1965, no action had been taken by the city on either the application for the year 1963–1964 or the late filed application for the year 1964–1965, nor had any portion of the annual $55 fees been returned. At the time of trial still another application was pending (for the year 1965–1966) on which a $55 fee had also been paid but, likewise, no action had been taken by the city on that application.

Mashlakjian's application for 1963–1964 could well be viewed as a continuing application for a one year license, so that when the city failed to act thereon before the expiration of the period for which it was applied, it became an application for a license for the next annual license period, *i.e.*, for the year 1964–1965, the license year in which the ticket was issued and specific renewal application made the following day. It is, however, unnecessary for us to decide whether the application can properly be so characterized. As previously mentioned, the Detroit police officer testified that the city accepted the application made on May 21, 1965, for the year 1964–1965 and the fee therefor, no part of which had been returned by the time of trial. On this appeal the city does not contend that Mashlakjian's application for renewal was not pending throughout the period from May 15, 1963 (the date the 1963–1964 application was filed) until the time the ticket was issued for the offense of which he was later convicted and

from which conviction he now appeals. Accordingly, we proceed on the assumption that Mashlakjian's application for renewal was pending throughout.

It is now well established that a licensing authority issuing occupational licenses may not refuse, revoke or suspend a license without informing the applicant or licensee of the reasons for the proposed negative action and giving him an opportunity to be heard thereon. Thus, whether called a renewal or a new application, Mashlakjian was entitled to notice and to an opportunity to be heard before denial of his application. This was his right both as a matter of constitutional principle[1] and under provisions of city of Detroit ordinances.[2]

---

[1] Applications for license:

*Willner* v. *Committee on Character and Fitness* (1963), 373 US 96, 105 (83 S Ct 1175, 10 L Ed 2d 224) (hearing does not satisfy requirements of procedural due process if applicant is not informed of reasons for his proposed rejection and given an opportunity to rebut those reasons); *Bennett* v. *Arizona State Board of Public Welfare* (1963), 95 Ariz 170 (388 P2d 166) (child care license application); *Milligan* v. *Board of Registration in Pharmacy* (1965), 348 Mass 491 (204 NE2d 504) (application for pharmacy license); *Brown* v. *Murphy* (1962), 34 Misc 2d 151 (224 NYS2d 423) (application for tow truck driver's license).

Revocation of license:

*Prouty* v. *Heron* (1953), 127 Colo 168 (255 P2d 755) (engineer's license); *Bechler* v. *Parsekian* (1961), 36 NJ 242 (176 A2d 470, 478) (driver's license).

Generally:

1 Davis, Administrative Law Treatise, §§ 7.18, 7.19, p 493 *et seq.*; 9 McQuillin on Municipal Corporations (3d ed Rev), § 26.89, p 208.

[2] The public lodging house ordinance provides that the mayor is authorized to revoke a public lodging house license if issued or refuse to issue or renew a license if he finds that the applicant has been convicted of habitual violations of any provisions "of this article, the laws of the state or the United States, or that the applicant is not a suitable person to conduct or maintain the business of" a public lodging house. It is also provided that no license shall be issued and renewed until after the premises have been inspected by certain city departments and it has been found that they comply "in all respects with the rules and regulations pertaining thereto."

Detroit Ord 699-F (subsequently amended and now Detroit Municipal Code § 31-1-1 *et seq.*) which was in effect at all times here material provides that the license period is ordinarily one year; that "the mayor may refuse to issue, or may revoke or suspend licenses heretofore or hereafter issued at any time * * * Such denial, revocation or suspension shall be made in the following

In *Gilchrist* v. *Bierring* (1944), 234 Iowa 899, (14 NW2d 724) the licensing authority asserted that there was no need to grant a hearing to one seeking renewal of a license issued to a school of cosmetology because, the license having expired, the licensee's rights thereupon were extinguished. In rejecting that contention the Iowa Supreme Court made the following observations which we now adopt (pp 914–916):

"The right to earn a living is among the greatest of human rights and when lawfully pursued, cannot be denied. It is the common right of every citizen to engage in any honest employment he may choose, subject only to such reasonable regulations as are necessary for the public good. Due process of law is satisfied only by such safeguards as will adequately protect these fundamental, constitutional rights of the citizen. Where the state confers a license to engage in a profession, trade or occupation, not inherently inimical to the public welfare, such license becomes a valuable personal right which cannot be denied or abridged in any manner except after due notice and a fair and impartial hearing before an unbiased tribunal. * * *

"The state cannot, by issuing only annual licenses, ingeniously thwart these precious rights. As stated in *Craven* v. *Bierring, supra,* 222 Iowa 613, 619 (269 NW 801, 805), once an annual license is issued to a

---

manner: the applicant or licensee shall be given seven days' notice that his application has been denied or that his license will be revoked, or suspended and the reason or reasons therefor, unless good cause be shown to the contrary after a hearing provided before the mayor or a person authorized by him to conduct the same. * * * Any person aggrieved by the denial, revocation or suspension, shall be entitled to a hearing before the mayor if proper application is made within thirty (30) days of such denial, revocation or suspension. The licensee shall be given an opportunity at such hearing to present reasons justifying his right to be a licensee or his continuance as a licensee and the department or departments having jurisdiction over the occupation or business of such licensee shall be given an opportunity to present reasons justifying such denial, revocation or suspension."

See *Ratliff* v. *Lampton* (1948), 32 Cal 2d 226 (195 P2d 792).

dentist, 'unless he has violated some of the provisions of the statute applicable to his profession, he is entitled to renewal of his license as a matter of right.'
\* \* \*

"The plaintiff heretofore has been determined to be qualified to operate a school of cosmetology. He has made a substantial investment in reliance thereon. He possesses a valuable personal right, which the courts are bound to protect and to secure to him. It is our duty to see that this personal right is not taken from him without due process of law. If his conduct has demonstrated that he is no longer worthy to operate his business, a determination of that fact constitutes the exercise of a judicial function. That function can be exercised only after notice and an opportunity to be heard. Defendants undertook to destroy plaintiff's business without according to him that fundamental right. This they cannot do."

See, also *Bankers Life & Casualty Co.* v. *Cravey* (1952), 208 Ga 682 (69 SE2d 87), where the Georgia Supreme Court refused to draw a distinction in regard to notice and hearing requirements between revocation of and refusal to renew a license.

Mashlakjian's filing of the application for renewal had the effect of preserving the *status quo* until the city acted thereon in the manner required by law. In *Parker* v. *Board of Barber Examiners* (La App, 1955), 84 So 2d 80, Louisiana's Court of Appeals speaking through Judge Albert Tate, Jr. ruled that, with the possible exception of a public emergency requiring immediate action, the procedural due process to which an occupational licensee is entitled requires not only notice and an opportunity to be heard but preservation of the *status quo* until completion of the review process.

If the city does not choose timely to act on a renewal application it should not be heard to say that

the licensee's rights are at an end and that it can, thus, put the renewal applicant out of business without notice or hearing. It is not too much to expect that the city which seeks to enforce the law itself obey the law.

Occupational licenses are required by innumerable governmental authorities for countless endeavors. The periods for which they are issued are generally 1 and not more than 2 or 3 years. We know from our own experience as practitioners that an application for renewal is commonly filed toward the end of the license period and that frequently no action is taken by the licensing authority until after the date on which, by its terms, the license is due to expire. Licensing authorities ordinarily do not expect that their licensees whose applications have not been acted upon before the expiration of the license period will suspend operations until the licensing authority is able and willing to get around to considering the renewal application and act thereon. The city of Detroit is not atypical in that respect.

Commerce cannot and should not cease because of a logjam in a licensing department, which it may not be possible to free up for weeks, months, and sometimes even longer after the commencement of the new license period. The convenience of the licensing authority and of its licensees, the interest of the public, common sense, all combine to support the convention just described regarding renewals. Courts ought not to permit labels to obfuscate the substance of a matter, nor should they close their eyes to realities and a well-established practice of the kind just described.

The city's reliance on *Poulos v. New Hampshire* (1952), 345 US 395 (73 S Ct 760, 97 L Ed 1105, 30 ALR2d 987), is misplaced. In *Poulos* a permit was improperly denied a preacher who sought permis-

sion to conduct religious services in a city park. Nevertheless, the Supreme Court held the preacher could not use the park without a permit.

This case of Mashlakjian differs from *Poulos* in 2 respects. *Poulos* sought an original grant of a license, while Mashlakjian applied for renewal of a license to run a long-established business. *Poulos* obtained a decision from the administrative body and acted in defiance thereof. Mashlakjian never heard from the city of Detroit and had a right to suppose that his application was still pending until he did hear from the city and, in our judgment, to continue to operate his long-established business until the city in accordance with applicable constitutional and ordinance requirements took steps to revoke his license if that be its purpose.

To affirm this conviction would be to say that the city's silence constituted an effective denial of a renewal without regard to the fact that the city failed to make any attempt to comply with constitutional and ordinance-imposed notice and hearing requirements. The city may not ignore its obligations and on the strength thereof seek redress against the citizen whose rights have been violated.

The conviction and sentence are vacated and the defendant discharged.

LESINSKI, C. J., and ANDREWS, J., concurred.