816 F.2d 682
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
TAYLOR NOVELTY, INC., Plaintiff-Appellant,
v.
CITY OF TAYLOR, Defendant-Appellee.
 Nos. 85-1439, 85-1506.
 United States Court of Appeals, Sixth Circuit.
 April 21, 1987.
 
 Before MILBURN and BOGGS, Circuit Judges, and EDWARDS, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff Taylor Novelty & Toy, Inc. (Novelty) appeals from: (1) the District Court's denial of a temporary injunction preventing the City of Taylor, Michigan, (the City) from enforcing certain of its municipal ordinances which Plaintiff argues are facially unconstitutional, and (2) the district court's grant of a temporary injunction to the City closing Novelty's store until Novelty complies with the City's process for obtaining a certificate of occupancy. For the reasons given below, we affirm the district court's decisions.
 
 
 2
 * On July 1, 1984 Novelty leased a building at 8950 Telegraph Road for its business. Novelty's president, David Curtis, applied for a certificate of occupancy on July 30, 1984, stating that the building was to be used for a "retail store." In November 1984, the City inspected the building. Curtis told the City's inspector that the building was to be used as a toy store. The City granted Novelty an occupancy certificate, although a building permit had never been issued. A building permit is a necessary prerequisite for a valid occupancy certificate under Article 29.00, Sec. 29.04-5 of the City's zoning ordinance.
 
 
 3
 In December, Novelty filed a complaint in federal district court, stating that it intended to use the store to offer sexually explicit publications for sale, and that it intended to exhibit sexually explicit video tape recordings and live semi-nude and nude dancing by means of coin-operated amusement devices. The complaint asserted that two parts of the City's zoning regulations, Art. 15.00, Sec. 15.03(4) and ordinance No. 83-135, as amended, violated Novelty's first amendment rights to operate such machines.
 
 
 4
 Novelty is located in a B-3 zone, a zone which permits general business operations, such as theatres, restaurants, and retail establishments. B-4 zones permit special land uses which might be incompatible with other districts, such as bus passenger stations, carpenter shops, parking garages, fast-food restaurants, wholesale establishments, and lumber yards. Article 15.00, Sec. 15.03(4) of the City's Zoning Code designates coin-operated amusement establishments as a special land use permitted only in B-4 zones. Article 15.00, Sec. 15.03(4) does not address land use in B-3 zones.
 
 
 5
 Ordinance 83-135, as amended, defines: (1) a "mechanical amusement arcade" as any operation which has a substantial part of its business involved with the operation of mechanical amusement devices, or has three or more mechanical amusement devices; (2) a "mechanical amusement device" as a coin or token operated machine, hand or mechanical powered, used as a game, or for entertainment or amusement; and (3) a "local shopping center" as a land parcel of at least five contiguous acres with at least one store or business and adequate parking. The ordinance permits the arcades only to "be located in a local shopping center, or an equally compatible location."
 
 
 6
 After receiving Novelty's complaint, the City reviewed Novelty's Building Department file, and revoked Novelty's certificate of occupancy on the grounds that Curtis had misrepresented Novelty's proposed use of the building in the occupancy permit application. Following a hearing, the district court denied Novelty's motion for a preliminary injunction on January 23, 1985, stating that there had been no showing of irreparable harm, and that the motion was premature.
 
 
 7
 Novelty continued modification of the building and opened for business in March 1985. In April 1985, the City filed a motion for a temporary restraining order requiring Novelty to close, arguing that Novelty's continued occupancy without a certificate of occupancy constituted a nuisance per se under Michigan's Zoning Enabling Act, M.C.L. Sec. 125.587. Novelty filed a cross-motion for a preliminary injunction, repeating its earlier constitutionality assertions and arguably asserting that the City deliberately delayed action on Novelty's requests for building and other permits, although this is not absolutely clear on the face of the motion. On May 20, the district court granted the City's motion, finding that Novelty's use and occupancy without a certificate was a nuisance per se. On June 11, the district court denied Novelty's cross-motion, for the same reasons as given in the January 23 oral opinion. Novelty then appealed the district court's denial of its December and April motions for injunctive relief, and the granting of the City's motion for injunctive relief.
 
 II
 
 8
 This Circuit has clearly described the appellate court's role in reviewing a district court's grant or denial of a preliminary injunction. The reviewing court is
 
 
 9
 limited to a determination of whether the district court abused its discretion. A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard.
 
 
 10
 There are four factors to be considered in determining whether the grant or denial of a preliminary injunction was an abuse of discretion: (a) the likelihood of success on the merits of the action, (b) the irreparable harm which could result without the relief requested, (c) the impact on the public interest, and (d) the possibility of substantial harm to others. Although these four factors must be considered in assessing a request for a preliminary injunction, the four factors do not establish a rigid and comprehensive test for determining the appropriateness of preliminary injunctive relief. Instead, the district court must engage in a realistic appraisal of all the traditional factors weighed by a court of equity."
 
 
 11
 Christian Schmidt Brewing Co. v. G. Heilman Brewing Co., 753 F.2d 1354, 1356 (6th Cir.1985) (citations omitted); see also American Motors Sales Corp. v. Runke, 708 F.2d 202, 205 (6th Cir.1983).
 
 III
 
 12
 The City agreed not to enforce ordinance 83-135, which regulates the operation and location of coin operated amusement devices and restricts them to specific areas within B-4 zones, during the pendancy of the litigation (T. 1/23/85, at 45). Novelty acknowledges that "an agreement not to enforce an ordinance accomplishes the same thing as a preliminary injunction." However, Novelty argues that the combination of ordinance 83-135 with Sec. 15.03, which lists coin-operated amusement devices as a permitted use in a B-4 zone, but does not address permitted B-3 zone uses, effectively operates to exclude all such devices from the City. Thus, Novelty contends, both ordinance 83-135 and Sec. 15.03 are unconstitutional due to their combined effect of eliminating an arguably protected mode of expression.[1] This unconstitutionality, the argument runs, shows the likelihood of Novelty's success on the merits, thus entitling it to an injunction blocking the operation of both 83-135 and Sec. 15.03.
 
 
 13
 This argument is not persuasive. Conceivably, it could be the case that a combination of zoning regulations with the effect of preventing the operation of certain kinds of mechanical amusement devices is unconstitutional. But see City of Renton v. Playtime Theatres, Inc., --- U.S. ---, 106 S.Ct. 925, 932 (1986). However, Novelty fails to establish the necessity for considering these two regulations together at this time, but merely asserts the necessity as self-evident. Given the City's agreement not to enforce ordinance 83-135 during the pendancy of the litigation, we must consider Sec. 15.03 independently, for the purposes of an appeal of a denial of a preliminary injunction.
 
 
 14
 Section 15.03(4) does not prohibit coin-operated arcades, merely restricting them to B-4 zones. It is not self-evident that this establishes an unconstitutional prior restraint, even assuming, arguendo, that Novelty succeeds in demonstrating the unconstitutionality of ordinance 83-135. We do not read the Constitution as requiring that every zone permit every possible use. Neither does the record reflect that Novelty has yet even attempted to obtain a zoning variance. To succeed on this point, Novelty must show that Sec. 15.03 operates to bar its operation of a protected enterprise, rather than merely regulating such enterprises. City of Renton v. Playtime Theatres, Inc., --- U.S. ----, 106 S.Ct. 925, 932 (1986).
 
 
 15
 The record, at this early point, does not demonstrate that the argument for the unconstitutionality of Sec. 15.03, individually or in combination with ordinance 83-135, is so likely to succeed on the merits that we can say that the district court erred in denying the preliminary injunction. Novelty is, of course, free to argue at trial that the combination is unconstitutional on its face or as applied.
 
 IV
 
 16
 We now turn to the City's effort to enjoin Novelty's operation. Novelty argues that the district court lacked subject matter jurisdiction over City's April state-law counterclaim because there was neither a compulsory counterclaim under Rule 13(a), Fed.R.Civ.P., nor any independent basis for federal jurisdiction. Under Rule 13(a), a counterclaim is compulsory if "it arises out of the transaction or occurrence that is the subject of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." A state-law counterclaim which presents no independent basis for federal jurisdiction "is within the ancillary jurisdiction of the federal district court only if it is a compulsory counterclaim under Fed.R.Civ.P. 13(a)." Maddox v. Kentucky Finance Company, 736 F.2d 380, 382 (6th Cir.1984). This court has upheld the exercise of ancillary discretion in the absence of abuse of discretion by the district court. County of Oakland v. City of Berkley, 742 F.2d 289, 296 (6th Cir.1984).
 
 
 17
 The courts have not applied Rule 13(a) literally. Rather, the various circuits have developed tests to determine when a counterclaim is deemed "compulsory." This Circuit has adopted a widely accepted test which looks to whether or not there is a "logical relation" between the two claims. United States v. Southern Construction Company, 293 F.2d 493, 500 (6th Cir.1961), cert. granted, 368 U.S. 975, rev'd in part sub. nom. Southern Construction Company v. Pickard, 371 U.S. 57 (1962). Although we have not defined the scope of the logical relation test, our precedents do provide indicia. In Maddox, supra, we focused our inquiry on whether "[t]he claim and counterclaim will present entirely different legal, factual, and evidentiary questions [and whether] the interests of judicial economy and efficiency would be served." Maddox, 736 F.2d, at 383.
 
 
 18
 Plaintiff's claim and defendant's counterclaim do not raise entirely different factual issues. Both are offshoots of the same controversy and the same occurrence: Novelty's attempt to open and operate its business at 8950 Telegraph Road in Taylor, Michigan. At this preliminary stage of litigation, it seems probable that the claim and the counterclaim will raise many similar factual issues. If so, then judicial economy will be served by the resolution of the entire controversy in one forum. Thus, we cannot say that the district court abused its discretion in exercising ancillary jurisdiction.
 
 
 19
 Novelty argues that the City's revocation of its certificate of occupancy without notice or an opportunity to be heard violated its due process rights. Analysis of Novelty's claim involves a two-part inquiry: "We must first ask whether the asserted individual interests are encompassed within the Fourteenth Amendment's protection of life, liberty or property; if protected interests are implicated, we must then decide what procedures constitute due process of law." Ingram v. Wright, 430 U.S. 651, 672 (1977) (citations omitted).
 
 
 20
 Previous Michigan cases establish that the holder of a license does have some fourteenth amendment property interest in the license. Bundo v. City of Walled Lake, 395 Mich. 679, 238 N.W.2d 154 (1976) (plaintiff who reasonably relied upon a licensing procedure which generally provided for routine renewal had a property interest in liquor license). Similarly, the revocation or failure to renew a license raises due process issues. Bundo, supra; Tally v. Detroit, 58 Mich.App. 261, 227 N.W.2d 214 (1975) (cabaret licensing ordinance satisfied due process by providing a definite standard); Detroit v. Mashlakjian, 15 Mich.App. 236, 166 N.W.2d 493 (1969) (denial of hotel license renewal application requires due process).
 
 
 21
 However, merely to say that there is a property interest does not determine what process is due. Unlike the situation in Bundo, Tally, or Mashlakjian, Novelty's certificate of occupancy was not denied upon an application for renewal. Rather, the City asserts that the certificate was never valid, due to Novelty's false statement as to the purpose to which the premises would be put, and due to Novelty's failure to obtain a building permit, without which a certificate of occupancy could not validly be issued. The City argues that the certificate was therefore issued in violation of its own ordinances, and cannot be valid. Further, Novelty had not yet opened for business and had been in possession of the certificate for less than two months when its certificate was revoked. Finally, this was not license to operate a business, as in Bundo, Tally, or Mashlakjian, but rather a permit to occupy a building. Therefore, Novelty's property interest in the certificate of occupancy is less than was the case in Bundo, Tally, or Mashlakjian.
 
 
 22
 Novelty is entitled to "timely written notice detailing the reasons for proposed administrative action [and] an effective opportunity to defend by confronting any adverse witnesses and by being allowed to present in person witnesses, evidence and arguments ..." Bundo v. City of Walled Lake, 238 N.W.2d 154 (1976), quoting Sponick v. Detroit Police Department, 49 Mich.App. 162, 211 N.W.2d 674, 686 (1973). However, Novelty does not cite, nor has our own research found, any case which mandates a hearing prior to revocation of a zoning permit, which was issued based upon a deliberately false statement by the would-be occupant, and in contravention of the issuing authority's own ordinances. See Danish News Company v. City of Ann Arbor, 517 F.Supp. 86 (1981), aff'd, 751 F.2d 384 (1984). Article 30.00, Sec. 30.03 of the Taylor zoning regulations provides for an appeal of the revocation to the Taylor Board of Appeals, and we are unable to say that the District Court abused its discretion by permitting the City to fulfill Novelty's right to due process by providing a post-revocation hearing, rather than requiring a pre-revocation hearing.
 
 
 23
 Novelty argues that it was denied its right to present evidence at the April hearing on its injunction. It now asserts that, if permitted, it would have shown that the City deliberately delayed action on its requests for building and other permits. Our review of the record suggests that the district court did not receive evidence because there were no material facts at issue, merely differing interpretations of the same facts. Although the City and Novelty may have disagreed as to the legal import of those facts, such a disagreement does not create a right to present evidence. Sec. & Exch. Comm'n v. G. Weeks Sec., Inc., 678 F.2d 649 (6th Cir.1982). Further, though Novelty now asserts that it wished to present evidence, it presented neither affidavits supporting its cross-motion nor counter-affidavits in reply to the City's affidavits supporting the City's motion for a preliminary injunction. Thus, the District Court did not abuse its discretion by not permitting Novelty to present evidence on this issue.
 
 
 24
 The decisions of the District Court are AFFIRMED.
 
 
 25
 MILBURN, Circuit Judge, concurring in part and dissenting in part.
 
 
 26
 Because I believe that the district court abused its discretion by failing to comply with Rule 52(b) of the Federal Rules of Civil Procedure "in set[ting] forth the findings of fact and conclusions of law which constitute[d] the grounds of its action" in granting a preliminary injunction, and because defendant's revocation of plaintiff's certificate of occupancy without prior notice and opportunity to be heard violated due process, I respectfully dissent from that part of the majority's opinion affirming the district court's grant of defendant's motion to preliminarily enjoin operation of plaintiff's business.
 
 
 27
 The majority unexplainably declines to address plaintiff's argument that the district court failed to make the requisite findings of fact and conclusions of law to support the grant of defendant's motion for preliminary relief. The district court found only that plaintiff was "using and/or occupying" the premises "without benefit of a valid certificate of occupancy" and that the use and occupancy "constitutes a nuisance per se pursuant to M.C.L.A. Sec. 125.587." The district court failed to make any findings with regard to irreparable injury or the other prerequisites for preliminary relief.
 
 
 28
 Ordinarily, "[t]he standard of review on appeal from the grant or denial of a preliminary injunction is limited to a determination of whether the district court abused its discretion." Christian Schmidt Brewing Co. v. G. Heileman Brewing Co., 753 F.2d 1354, 1356 (6th Cir.), cert. dismissed, 469 U.S. 1200 (1985); American Motors Sales Corp. v. Runke, 708 F.2d 202, 205 (6th Cir.1983). The reviewing court may, however, reverse if the district court fails to "comply with the provisions of Rules 52(a) and 65(d) of the Federal Rules of Civil Procedure relating to findings of fact and conclusions of law in the granting of a preliminary injunction." United States v. Virginia, 369 F.2d 1300, 1302 (4th Cir.1978) (footnotes omitted). See also 11 C. Wright & A. Miller, Federal Practice and Procedure Sec. 2955, at 540 (1973) [hereinafter cited as 11 C. Wright].
 
 
 29
 Rule 52(a) requires that "in granting or refusing interlocutory injunctions the court shall ... set forth the findings of fact and conclusions of law which constitute the grounds of its action." Rule 65(d) requires that "[e]very order granting an injunction and every restraining order shall set forth the reasons for its issuance," and is generally satisfied where the court's findings of fact and conclusions of law are sufficient to meet the requirements of Rule 52(a). 11 C. Wright, supra, Sec. 2955, at 540. "A full and fair compliance [with these provisions] is of the highest importance to a proper review of the grant or denial of a preliminary injunction." 9 C. Wright & A. Miller, Federal Practice and Procedure Sec. 2576, at 695 (1971). See also Mayo v. Lakeland Highlands Canning Co., 309 U.S. 310, 316 (1940) ("It is of the highest importance to the proper review of the action of a court in granting or refusing to grant a preliminary injunction that there should be a fair compliance with Rule 52(a)....").
 
 
 30
 The district court, in determining whether to grant a preliminary injunction, must consider the likelihood of success on the merits of the action, the irreparable harm which could result without the relief requested, the impact on the public interest, and the possibility of substantial harm to others should the injunction be refused or granted. In re DeLorean Motor Co., 755 F.2d 1223, 1228 (6th Cir.1985); Friendship Materials, Inc. v. Michigan Brick, Inc., 679 F.2d 100, 102 (6th Cir.1982); United States v. School District, 577 F.2d 1339, 1351 (6th Cir.1978). The district court must "make specific findings concerning each of these four factors, unless fewer are dispositive of the issue." DeLorean Motor Co., 755 F.2d at 1228. See also United States v. School District, 577 F.2d at 1352. If the district court fails to make the required findings, the reviewing court will ordinarily vacate the judgment and remand for further findings. See United States v. Virginia, 569 F.2d at 1302.
 
 
 31
 The single most important "prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." 11 C. Wright, supra, Sec. 2948, at 431. "Only when the threatened harm would impair the court's ability to grant an effective remedy is there really a need for preliminary relief." Id. at 431-34. See also Dollar Rent A Car v. Travelers Indemnity Co., 774 F.2d 1371, 1375 (9th Cir.1985) ("An essential prerequisite to the granting of a preliminary injunction is a showing of irreparable injury to the moving party in its absence."); Buckingham Corp. v. Karp, 762 F.2d 257, 262 (2d Cir.1985) ("The linchpin of [preliminary] relief is that threatened irreparable harm will be prevented by that injunction."); Tate v. American Tugs, Inc., 634 F.2d 869, 870 (5th Cir.1981) ("An indispensable prerequisite to issuance of a preliminary injunction is prevention of irreparable injury."); United States v. Pennsylvania, 533 F.2d 107, 110 (3d Cir.1976) ("We have often emphasized that an essential prerequisite to the grant of a preliminary injunction is a showing by the movant of irreparable injury pendente lite if the relief is not granted.").
 
 
 32
 Because of the primacy of this prerequisite, "a preliminary injunction should generally only be granted when there is a finding of irreparable injury." National Tank Truck Carriers, Inc. v. Burke, 608 F.2d 819, 824 (1st Cir.1979). "A district court abuses its discretion when it grants a preliminary injunction without making specific findings of irreparable injury to the party seeking the injunction, and such an injunction must be vacated on appeal." Friendship Materials, 679 F.2d at 105. See also In re Arthur Treacher's Franchisee Litigation, 689 F.2d 1137, 1143 (3d Cir.1982) (a court of appeals cannot sustain a preliminary injunction absent a finding of irreparable injury); Dataphase Systems, Inc. v. CL Systems, Inc., 640 F.2d 109, 114 n. 9 (8th Cir.1981) (en banc) ("[T]he absence of a finding of irreparable injury is alone sufficient ground for vacating the preliminary injunction.").
 
 
 33
 The fact that defendant's request for preliminary relief was based on Mich.Comp. Laws Sec. 125.587 does not alter the standard for granting preliminary relief. "Although the right upon which [the] cause of action is based is state-created, Rule 65(a) ... contemplates a federal standard as governing requests addressed to federal courts for preliminary injunctions." System Operations, Inc. v. Scientific Games Development Corp., 555 F.2d 1131, 1141 (3d Cir.1977). See also Perfect Fit Industries, Inc. v. Acme Quilting Co., 646 F.2d 800, 806 (2d Cir.1981) ("State law does not govern the scope of the equity powers of the federal court; and this is so even when state law supplies the rule of decision."), cert. denied, 459 U.S. 832 (1982); Continental Group, Inc. v. Amoco Chemicals Corp., 614 F.2d 351, 357 n. 10 (3d Cir.1980) ("Rule 65(a) ... contemplates a federal standard as governing requests addressed to federal courts for preliminary injunctions."); American Brands, Inc. v. Playgirl, Inc., 498 F.2d 947, 949 (2d Cir.1974) (applying federal standards in reviewing denial of preliminary injunction in diversity case); General Electric Co. v. American Wholesale Co., 235 F.2d 606, 608 (7th Cir.1956) ("The propriety of the issuance of a preliminary injunction ... is to be determined by the rules and decisions of federal courts."); Niagara Mohawk Power Corp. v. Graver Tank & Manufacturing Co., 470 F.Supp. 1308, 1312 (N.D.N.Y.1979) (federal standard governs the propriety of a preliminary injunction in a diversity case). In any event,Mich.Comp. Laws Sec. 125.587 does not dispense with consideration of the traditional equitable factors for preliminary relief. Farmington v. Scott, 374 Mich. 536, 132 N.W.2d 607 (1965) (basis for injunction comes from case law, not statute). The district court was required to consider the four factors set forth in DeLorean Motor Co., including irreparable injury, and its failure to do so constitutes an abuse of discretion. See Friendship Materials, 679 F.2d at 102-03.
 
 
 34
 A district court may also abuse its discretion by improperly applying the law or employing an erroneous legal standard. Christian Schmidt Brewing, 753 F.2d at 1356; United States v. School District, 577 F.2d at 1351 ("Improper application of the law ... is itself an abuse of discretion."); Clemons v. Board of Education, 228 F.2d 853, 857 (6th Cir.) ("[T]he trial court abuses its discretion when it fails or refuses properly to apply the law to conceded or undisputed facts."), cert. denied, 350 U.S. 1006 (1956). The district court's decision to grant defendant's motion for preliminary relief was based on its determination that plaintiff was occupying the premises without a valid certificate of occupancy and its rejection of plaintiff's argument that revocation of the certificate of occupancy violated due process. The district court concluded that plaintiff was not entitled to notice and an opportunity to be heard prior to revocation of the certificate because the certificate was issued on the basis of a fraudulent application.
 
 
 35
 The due process clause of the Fourteenth Amendment forbids a state to deprive anyone of life, liberty or property without due process of law. To establish a due process violation, one must show first that he was deprived of life, liberty or property and, second, that the deprivation was brought about without due process of law. In my view, plaintiff established both of these elements in the present case.
 
 
 36
 To have a protected property interest, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Board of Regents v. Roth, 408 U.S. 564, 577 (1972). The dimensions of a protected property interest "are defined by existing rules or understandings that stem from an independent source such as state law." Id. See also Cleveland Board of Education v. Loudermill, 105 S.Ct. 1487, 1491 (1985). "Although the underlying substantive interest is created by 'an independent source such as state law,' federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1, 9 (1978) (quoting Roth, 408 U.S. at 577).
 
 
 37
 The "hallmark" of a protected property interest is "an individual entitlement grounded in state law, which cannot be removed except 'for cause.' " Logan v. Zimmerman Brush Co., 455 U.S. 422, 430 (1982). See also Loudermill, 105 S.Ct. at 1491-92; Barry v. Barchi, 443 U.S. 55, 64 (1979); Callaway v. Block, 763 F.2d 1283, 1290 (11th Cir.1985); Myers v. Alcoa, 752 F.2d 196, 198 (6th Cir.), cert. denied, 106 S.Ct. 271 (1985); Occhino v. Northwestern Bell Telephone Co., 675 F.2d 220, 226 (8th Cir.) (per curiam), cert. denied, 457 U.S. 1139 (1982). "[P]roperty is what is securely and durably yours under state ... law, as distinct from what you hold subject to so many conditions as to make your interest meager, transitory, or uncertain...." Reed v. Shorewood, 704 F.2d 943, 948 (7th Cir.1983). A certificate of occupancy "is therefore property if it cannot be taken away from the holder before the end of a definite period without proof of misconduct on his part, so that if he keeps out of trouble he knows he can hold on to the [certificate] for that period." Baer v. Wauwatosa, 716 F.2d 1117, 1122 (7th Cir.1983). See also Loudermill, 105 S.Ct. at 1491-92; Barry, 443 U.S. at 64-65; Myers, 752 F.2d at 198; Reed, 704 F.2d at 948.
 
 
 38
 Defendant's building code provides for the issuance of certificates of occupancy and provides for their revocation in "case of any false statement or misrepresentation of fact in the application or on the plans on which the [certificate] was based." Taylor Building Code Sec. 112.6. Because plaintiff's certificate could not be revoked absent proof of misconduct in its procurement, plaintiff had a constitutionally protected property interest in the certificate. See Loudermill, 105 S.Ct. at 1491-92; Barry, 443 U.S. at 64; Myers, 752 F.2d at 198; Reed, 704 F.2d at 948.
 
 
 39
 Before an individual is deprived of a protected property interest, he must be afforded, at a minimum, notice and an opportunity to be heard, except in those extraordinary circumstances where some important governmental interest requires summary action. See Loudermill, 105 S.Ct. at 1493; Barry, 443 U.S. at 64-65; Boddie v. Connecticut, 401 U.S. 371, 378-79 (1971); Littlefield v. Afton, 785 F.2d 596, 603 (8th Cir.1986); Miller v. Chicago, 774 F.2d 188, 191 (7th Cir.1985), cert. denied, 106 S.Ct. 1949 (1986); Patterson v. Coughlin, 761 F.2d 886, 892 (2d Cir.1985), cert. denied, 106 S.Ct. 879 (1986); Harden v. Adams, 760 F.2d 1158, 1167 (11th Cir.), cert denied, 106 S.Ct. 530 (1985); Eash v. Riggins Trucking, Inc., 757 F.2d 557, 570 (3d Cir.1985) (en banc). Defendant in this case has failed to put forward any important governmental interest or extraordinary circumstance which would justify postponing notice and an opportunity to be heard until after the deprivation. Therefore, plaintiff was entitled to notice and an opportunity to be heard prior to the revocation of the certificate of occupancy. See Littlefield, 785 F.2d at 603; Harden, 760 F.2d at 1167.
 
 
 40
 The majority suggests that plaintiff was not entitled to predeprivation notice and an opportunity to be heard since the certificate of occupancy "was issued based upon a deliberately false statement by the would-be occupant." However,
 
 
 41
 Once it is determined that ... a property right exists, the procedural due process protections which attach to it cannot be discarded simply because the [city] unilaterally determined that it has sufficient cause to terminate. Stated differently, the "property right" which invokes due process considerations does not cease to exist simply because the [city's] claim appears to be prima facie valid.... [O]nce a property interest is established, federal due process attaches to protect the interest from being extinguished without some type of pretermination hearing.
 
 
 42
 Myers, 752 F.2d at 198-99. The certificate of occupancy could not be revoked without affording plaintiff an opportunity to prove that it did not misrepresent the proposed use of the building in the occupancy permit application.
 
 
 43
 The majority's reasoning is directly contrary to the decision in Kerley Industries, Inc. v. Pima County, 785 F.2d 1444, 1446 (9th Cir.1986). There, the Pima County Air Quality Control District issued Kerley Industries a conditional permit allowing it to operate its chemical plant for thirty days, beginning on December 1, 1984. The county's Chief Zoning Inspector subsequently notified Kerley that its plant violated the county's zoning ordinance and advised the District that any permit issued in violation of the zoning ordinance was null and void. The District then wrote Kerley advising it of the Inspector's determination and that the conditional permit was null and void.
 
 
 44
 The court held that the conditional permit could not be revoked without prior notice and an opportunity to be heard:
 
 
 45
 Having granted [Kerley] a permit to operate its plant, the county could not take it away arbitrarily ..., for improper reasons, or without appropriate procedural safeguards.... The fact that plaintiff's operation might have violated the county's zoning ordinance does not render its interest in the permit any less deserving of constitutional protection. The violation was not conclusively established by the Chief Zoning Inspector's determination. The permit could not be revoked without giving Kerley an opportunity to prove the Zoning Inspector wrong.
 
 
 46
 785 F.2d at 1446.
 
 
 47
 The majority also suggests that it was within the district court's discretion to permit defendant "to fulfill [plaintiff's] right to due process by providing a post revocation hearing, rather than requiring a pre-revocation hearing." To the contrary, whether plaintiff is entitled to predeprivation notice and opportunity to be heard is indisputably not within the district court's discretion. A plaintiff has a right to predeprivation notice and an opportunity to be heard unless the circumstances are those which are recognized as excusing predeprivation notice and an opportunity to be heard. If predeprivation notice and an opportunity to be heard are required, state postdeprivation remedies cannot satisfy due process. Littlefield, 785 F.2d at 600.
 
 
 48
 Accordingly, I would REVERSE the district court's grant of defendant's motion for preliminary relief and REMAND for further proceedings. Otherwise, I concur with the majority's opinion.
 
 
 
 [1]
 Novelty frequently asserts in its brief that Schad v. Mt. Ephraim, 452 U.S. 61 (1981), provides first amendment protection to coin-operated machines for viewing nude dancing. This is not accurate. Schad held that an ordinance prohibiting all live entertainment was unconstitutionally overbroad. At most, the Schad court said in dictum that "nude dancing is not without its first amendment protections from official regulation." 452 U.S. at 66 (citations omitted)