**FRIENDSHIP MATERIALS, INC.,**
**Plaintiff-Appellee,**

v.

**MICHIGAN BRICK, INC., Cadillac Brick**
**Co., and Century Brick Co.,**
**Defendants-Appellants.**

**No. 80–1018.**

United States Court of Appeals,
Sixth Circuit.

Argued June 1, 1981.

Decided May 26, 1982.

Gregory L. Curtner, Detroit, Mich., for defendants-appellants.

Robert V. Seymour, Southfield, Mich., for plaintiff-appellee.

Before ENGEL and JONES, Circuit Judges, and WEICK,* Senior Circuit Judge.

* On December 31, 1981 Judge Weick retired from regular active service under 28 U.S.C. § 371(b) and became a Senior Circuit Judge.

ENGEL, Circuit Judge.

The defendant Michigan Brick, Inc. ("Michigan Brick") appeals the order of the district court granting a preliminary injunction in this antitrust case. The plaintiff is Friendship Materials, Inc. ("Friendship"), a Detroit area firm which sells building materials and supplies to the construction industry. Michigan Brick manufactures a particular kind of clay brick known as face brick and sells it to dealers in southeastern Michigan as well as to dealers in Canada and other parts of the United States. Face brick is popular in residential and commercial construction, and Michigan Brick is the only manufacturer of face brick in southeastern Michigan. The closest competing manufacturer of face brick is located in Ohio some 180 to 190 miles from Detroit.

Friendship's complaint alleged that Michigan Brick conspired with two of its Detroit area dealers, Cadillac Brick Co. ("Cadillac") and Century Brick Co. ("Century"),[1] to prevent Friendship from obtaining face brick manufactured by Michigan Brick, and that this conspiracy amounted to an unreasonable restraint of trade violative of section 1 of the Sherman Act.[2] The complaint also alleged a conspiracy among the defendants to monopolize and attempt to monopolize the distribution and sale of face brick in southeastern Michigan, in violation of section 2 of the Sherman Act.[3] Friendship demanded treble damages under 15 U.S.C. § 15 (1976), and preliminary and permanent injunctive relief under 15 U.S.C. § 26 (1976).

In 1977, Michigan Brick had seven dealers in the metropolitan Detroit area. These dealers sold approximately 12 million Michigan Brick face bricks in the Detroit market during that year. This amounted to approximately 30 percent of Michigan Brick's total production, and accounted for 10 to 20 percent of the total Detroit brick market. Cadillac is by far the largest Michigan Brick dealer, having accounted for approximately 80 percent of the Michigan Brick sales in Detroit in 1977. Friendship and Cadillac are direct competitors in selling face brick and other types of brick to builders and contractors in the Detroit metropolitan market. Michigan Brick has consistently refused to make Friendship one of its dealers or to sell its face brick directly to Friendship.

Beginning in 1975, Friendship was able to acquire Michigan face brick indirectly, purchasing the face brick from Century at a premium of $3.00 to $5.00 per thousand over the price which Michigan Brick charged its dealers. This enabled Friendship to compete with Cadillac and other Michigan Brick dealers in the sale of Michigan face brick. In late 1976, however, Friendship's indirect source of Michigan face brick was cut off by Century's refusal to continue selling the brick to it. Friendship was thereafter unable to obtain the brick, directly or indirectly. Friendship's antitrust claim under section 1 of the Sherman Act is that Cadillac and Michigan Brick successfully conspired to coerce Century from selling to Friendship.

After an extensive hearing, the district court concluded that Friendship had shown a substantial likelihood of ultimately proving both a vertical and horizontal conspiracy between the defendants to restrain trade:

The defendants have entered into an agreement which has deprived, and will continue to deprive, the plaintiff of its source of Michigan Face Bricks. The sole purpose of the agreement between them is to prevent the plaintiff from engaging in intra-brand price competition with

---

1. For reasons unrelated to this litigation, Century is no longer in business.

2. Section 1 of the Sherman Act provides in relevant part: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal...." 15 U.S.C. § 1 (1976).

3. Section 2 of the Sherman Act provides in relevant part that "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony ...." 15 U.S.C. § 2 (1976).

Cadillac Brick Co. and perhaps with others. . . .

*Friendship Materials, Inc. v. Michigan Brick, Inc.*, Civ. No. 77–70542, Mem. Op. at 1 (E.D.Mich. April 25, 1979) (hereinafter "Memorandum Opinion").

Considering the entire evidence, it now appears with almost certainty that the decision of Century Brick Company . . . to discontinue selling Michigan Face Brick to Friendship Materials, Inc. . . . was a direct result of pressure from Michigan Brick, Inc. . . . applied at the insistence of Cadillac Brick Co. . . . , and that there was an implied agreement between Cadillac, Michigan Brick, and Century that Century would discontinue selling Michigan Face Brick to Friendship. The reasons given by Century for such action were pretextual.

Memorandum Opinion at 1 (Nov. 21, 1979). The district court held that these facts, if established, would amount to a *per se* violation of section 1 of the Sherman Act, and that Friendship had therefore demonstrated a substantial likelihood of ultimate success on its section 1 claim.

The district court did not expressly decide whether Friendship had demonstrated that it would suffer any *irreparable* injury in the absence of a preliminary injunction. Instead, the district court appears to have weighed the harm likely to be suffered by Friendship absent a preliminary injunction against the harm an injunction could cause to the defendants. According to the district court, this balance of harms favored the granting of an injunction:

As stated on the record, there is little, if any, credible evidence to support a conclusion that Friendship will be put out of business or even out of the brick business if it does not re-establish a source of supply of Michigan Face Brick during the pendency of this suit. The plaintiff's competitive position is damaged, however. It is difficult to conceive how the defendants can suffer any significant hardship by being restrained from the continuation of practices which violate the basic economic law of the land.

Memorandum Opinion at 2 (April 25, 1979). Consequently, the district court issued a preliminary injunction designed to prevent Michigan Brick from interfering in any way with the sale of Michigan face brick by one of its dealers to Friendship. The primary provision of the injunction is as follows:

1. Michigan Brick is restrained from discouraging or prohibiting any of its dealers in Michigan from selling Michigan Face Brick, and it is restrained from imposing or threatening to impose any sanctions against one of its dealers who elects to sell brick to Friendship.

Because the district court erred in issuing the preliminary injunction without making any findings of irreparable injury to Friendship absent the injunction, we vacate the preliminary injunction and remand.

I

Appellate review of a district court decision to grant or deny a preliminary injunction is, of course, limited to "a determination of whether the District Court abused its discretion." *Mason County Medical Ass'n v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977). In exercising its discretion to grant a preliminary injunction, however, the district court must consider four factors:

1) Whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits;

2) Whether the plaintiff has shown irreparable injury;

3) Whether the issuance of a preliminary injunction would cause substantial harm to others;

4) Whether the public interest would be served by issuing a preliminary injunction.

*Id.* Although these four factors guide the discretion of the district court, they do not establish a rigid and comprehensive test for determining the appropriateness of preliminary injunctive relief. "A fixed legal standard is not the essence of equity jurisprudence. . . ." *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 537 (6th Cir. 1978). Nevertheless, this court has never held that

a preliminary injunction may be granted without any showing that the plaintiff would suffer irreparable injury without such relief. Despite the overall flexibility of the test for preliminary injunctive relief, and the discretion vested in the district court, equity has traditionally required such irreparable harm before an interlocutory injunction may be issued. *See Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 61, 64–65, 95 S.Ct. 2069, 2077, 2078–2079, 45 L.Ed.2d 12 (1975); *Sampson v. Murray*, 415 U.S. 61, 88, 94 S.Ct. 937, 951, 39 L.Ed.2d 166 (1974); *Beacon Theatres v. Westover*, 359 U.S. 500, 506–07, 79 S.Ct. 948, 954, 3 L.Ed.2d 988 (1959); *E.E.O.C. v. Hocking Corp.*, 666 F.2d 1037, 1039 (6th Cir. Dec. 16, 1981); *United States v. Spectro Foods Corp.*, 544 F.2d 1175, 1181 (3rd Cir. 1976); 11 Wright & Miller, Federal Practice and Procedure § 2948, pp. 430–441 (1973); *see generally* Leubsdorf, *The Standard For Preliminary Injunctions*, 91 Harv.L.Rev. 525, 527–37 (1978). In *Sampson v. Murray, supra*, the Supreme Court reversed the granting of a preliminary injunction, in part because the plaintiff had not made any showing of irreparable harm. The Court stated:

> We believe that the Court of Appeals was quite wrong in suggesting that at this stage of the proceeding the District Court need not have concluded that there was actually irreparable injury. This Court has stated that "[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies" .... Yet the record before us indicates that no witnesses were heard on the issue of irreparable injury, that respondent's complaint was not verified, and that the affidavit she submitted to the District Court did not touch in any way upon considerations relevant to irreparable injury.

415 U.S. at 88, 94 S.Ct. at 951 (citations omitted).

The requirement of irreparable harm to support the granting of a preliminary injunction applies to private antitrust actions in the same way it applies to equity actions in general. This is made clear, both implicitly and explicitly, by section 16 of the Clayton Act, 15 U.S.C. § 26 (1976), which provides:

> Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, ... *when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity*, under the rules governing such proceedings, and upon the execution of proper bond against damages for an injunction improvidently granted *and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue* ....

(emphasis added). *Accord, Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc); *Triebwasser & Katz v. American Telephone & Telegraph Co.*, 535 F.2d 1356, 1359 (2d Cir. 1976); *Automatic Radio Mfg. Co. v. Ford Motor Co.*, 390 F.2d 113, 116 (1st Cir.), *cert. denied*, 391 U.S. 914, 88 S.Ct. 1807, 20 L.Ed.2d 653 (1968); II Areeda & Turner, Antitrust Law § 329, pp. 138–39 (1978); 15 Von Kalinowski, Antitrust Laws and Trade Regulation § 114.01[1], pp. 114–2, 114–6, 114–7 (1981).

## II

In granting Friendship's motion for a preliminary injunction, the district court appears to have employed the so-called "alternate" test which has been recognized by several circuits. Otherwise known as the "balance of hardships" test, the alternate test requires a showing of "sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Sonesta Int'l Hotels Corp. v. Wellington Associates*, 483 F.2d 247, 250 (2d Cir. 1973) (emphasis in original). Our review of the record convinces us that the district judge viewed the alternate test as eliminating the traditional requirement of irreparable injury whenever the balance of harms

tips decidedly in favor of the plaintiff.[4] As a result, the district court made no formal findings as to whether Friendship demonstrated a risk of suffering irreparable injury if a preliminary injunction were not granted. The district court found only that Friendship's "competitive position [would be] damaged," and that defendants would not suffer any significant hardship if preliminary relief were granted.

Because the district judge clearly did not consider it necessary to find *irreparable* harm to the plaintiff under the "balance of hardships" test, we cannot view the district court's general finding that Friendship's competitive position would be damaged absent a preliminary injunction as a finding of irreparable injury. On the other hand, we cannot read the district court's conclusion that Friendship was in little danger of going out of the brick business as a finding that Friendship would *not* suffer irreparable injury if preliminary relief were denied.

Following an oral argument before the district court on April 19, 1979, the district judge informally stated his tentative views as to whether Friendship had demonstrated irreparable injury. We refuse, however, to consider these remarks from the bench as findings of the district court. The subject of irreparable harm was not addressed in the two Memorandum Opinions later issued by the district court; the district judge repeatedly told the parties that his remarks were not to be taken as findings of fact; and, in any event, the remarks were made before he received all the evidence relevant to the motion and were clearly intended to be tentative only. We therefore review a preliminary injunction issued by the district court without any findings that the injunction was or was not necessary to prevent irreparable injury to the plaintiff.

Considerable confusion has been created, and the district court in this case may have been misled, by language in some of the cases which appears to state the "balance of

hardships" test as an alternative to the traditional irreparable harm test. *See, e.g. Charlie's Girls, Inc. v. Revlon, Inc.*, 483 F.2d 953, 954 (2d Cir. 1973) (per curiam). This view of the "balance of hardships" test is erroneous. The irreparable injury requirement is built into the balance of hardships approach: the irreparable harm to the plaintiff if there is no preliminary injunction is balanced against any injuries likely to be suffered by the defendant(s) if a preliminary injunction is granted. Several of the circuits which have recognized the "balance of hardships" test have now made it clear that the plaintiff must always demonstrate some irreparable injury before a preliminary injunction may issue. *See Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc); *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 195, 196 (4th Cir. 1977); *Triebwasser & Katz v. American Telephone & Telegraph Co.*, 535 F.2d 1356, 1359 (2d Cir. 1976). As the Second Circuit noted in *Triebwasser*,

> Our difficulty, however, is with the finding that the balance of hardships tips decidedly in the plaintiff's favor. At the outset, we should note that this language of the second prong of the [balance of hardships] test does not eliminate the basic obligation of the plaintiff to make a clear showing of the threat of irreparable harm. That is a fundamental and traditional requirement of all preliminary injunctive relief, since equity cannot intervene where there is an adequate remedy at law. If the element of irreparable damage is prerequisite for relief where the plaintiff must show probable success on the merits, then *a fortiori* where the plaintiff establishes something less than probable success on the merits, need for proof of the threat of irreparable damage is even more pronounced. In sum, the balancing of hardships test . . . necessarily includes the showing of irreparable harm.

---

4. We reach this conclusion after reading the district court's Memorandum Opinion of April 25, 1979 in conjunction with the brief filed by Friendship in the district court on April 2, 1979; the transcript of the oral argument before the district court on April 19, 1979; and the informal comments of the district judge following oral argument on April 19, 1979.

535 F.2d at 1359 (citations omitted). *See also Frische's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 651 (6th Cir. Feb. 3, 1982); 15 Von Kalinowski, Antitrust Laws and Trade Regulation § 114.01[1], p. 114–7 (1981).

 Whatever the merits of the alternate, or "balance of hardships" test may be, the purpose of the test is surely not to eliminate the irreparable harm requirement. Rather, the purpose of the test is to underscore the flexibility which traditionally has characterized the law of equity. It permits the district court, in its discretion, to grant a preliminary injunction even where the plaintiff fails to show a strong or substantial probability of ultimate success on the merits of his claim, but where he at least shows serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if an injunction is issued. Thus, the alternate test does not remove the irreparable harm requirement. Instead, it merely demonstrates that "[i]n general, the likelihood of success that need be shown [for a preliminary injunction] will vary inversely with the degree of injury the plaintiff will suffer absent an injunction." *Metropolitan Detroit Plumbing & Mechanical Contractors Association v. H.E.W.*, 418 F.Supp. 585, 586 (E.D.Mich.1976), *quoted with approval, Roth v. Bank of the Commonwealth*, 583 F.2d 527, 537–38 (6th Cir. 1978).

A district court abuses its discretion when it grants a preliminary injunction without making specific findings of irreparable injury to the party seeking the injunction, and such an injunction must be vacated on appeal. *See Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109, 114 n.9 (8th Cir. 1981) (en banc); *United States v. Spectro Foods Corp.*, 544 F.2d 1175, 1181 (3d Cir. 1976). Because the district court in this case failed to make any findings with regard to irreparable injury to Friendship, the preliminary injunction must be vacated and the cause remanded to the district court for further proceedings. We hasten to point out that we take no position on whether the record before us supports a finding of irrep-

arable harm to Friendship. This is a matter for the district court to decide in the first instance. Likewise, we do not reach any of the other arguments raised by Michigan Brick on this appeal.

The order of the district court granting the preliminary injunction is vacated, and the cause is remanded for further proceedings not inconsistent with this opinion.