787 F.2d 589
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
COMMUNICATIONS SYSTEMS, INC., Plaintiff-Appellant,
v.
THE CITY OF DANVILLE, KENTUCKY; RV CABLEVISION, INC.; GEORGE
CUNNINGHAM; MARK DEXTER; ROY ARNOLD and JOHN
BOWLING, Defendants-Appellees.
 85-5188
 United States Court of Appeals, Sixth Circuit.
 3/18/86
 
 AFFIRMED
 E.D.Ky.
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY
 BEFORE: KRUPANSKY and GUY, Circuit Judges; and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff Communications Systems, Inc. (CSI) appealed from the denial of a preliminary injunction in this civil action alleging anticompetitive violations of the Sherman Antitrust Act, 15 U.S.C. Secs. 1 and 2, and Section 164 of the Kentucky Constitution in connection with the award of a cable TV franchise.
 
 
 2
 On February 7, 1965, the City of Danville, Kentucky (Danville) granted a twenty year cable television franchise to Gregg Cablevision, Inc., which franchise was to expire on February 8, 1985. CSI was the successor in interest to that franchise.
 
 
 3
 In the summer or fall of 1982, City attorney Ed Hays advised the Danville Board of Commissioners that the city's cable television franchise would expire during 1985 and that the city should be prepared to solicit competitive bids for a new franchise. On September 28, 1982, the city entered into a contract with Charles Woodward (Woodward), a cable television consultant. Pursuant to the contract, Woodward agreed to prepare a Request for Proposals (RFP), to analyze the submitted bids, and to negotiate a final cable television franchise agreement for the City of Danville.
 
 
 4
 In January of 1983, the final draft of the RFP, prepared by Woodward, was distributed and made available to potential bidders. Pursuant to the RFP, each bidder was required to provide specified information in its application including but not limited to its experience in the cable TV industry and its financial condition. The RFP specified that the franchise would be awarded to the 'highest and best bidder' upon considering each bidder's proposal together with its reputation, financial capability, and previous history of performance. Pursuant to the RFP, the city reserved 'the right to reject any or all applications, to accept modifications of applications, and to waive any irregularities.'
 
 
 5
 On April 8, 1983, the City received proposals from five companies: CSI; RV Cablevision, Inc.; Communicable of Danville, Ltd.; Constitution Cable T.V., Inc.; and Danville Cablevision. On April 13, 1983, Edward F. Music, the Danville City Manager, advised the five applicants by letter that the City had invoked a 'no-contact' policy between bidders and members of the Danville City Commission. The letter notified the bidders that proposals had been transmitted to the city's cable consultant for review and recommendation, that the procedure would take approximately six weeks, and that each of them would be kept advised as to the progress of the selection and would be notified if the city needed additional information.
 
 
 6
 Thereafter, on May 3, 1983, Counsel for CSI requested clarification of the no-contact policy and the procedures to be implemented after Woodward's evaluations had been received. On May 12, 1983, Hays invited all five bidders to make oral presentations at a public meeting on June 3, 1983 and notified them that they would be permitted to make oral or written amendments or modifications to their respective initially submitted proposals.
 
 
 7
 On May 18, 1983, the City made a full public disclosure of all of the bids. On May 19, 1983, Woodward submitted his initial evaluation of each applicant's financial condition, technical capability and experience, services, staffing, and rates. Woodward's report ranked CSI first and RV Cablevision last overall.
 
 
 8
 At the June 3, 1983 public meeting, each bidder made an oral presentation explaining its respective proposal. Subsequent to the June 3, 1983 public meeting, all applicants were accorded an additional seven days within which to file written amendments to their initially submitted proposals. After all written amendments had been received by the city, they were forwarded to Woodward for a second evaluation.
 
 
 9
 On June 20, 1983, Woodward submitted a supplemental report which ranked CSI first and RV Cablevision second overall. After Woodward issued his supplementary report, a special meeting of the City Commission was conducted on July 5, 1983, to discuss the matter with Woodward via telephone. One week later, the City Commission awarded the franchise to RV Cablevision. The Resolution adopted by the Commission stated:
 
 
 10
 [T]his resolution is based upon and in consideration of those findings and recommendations set forth in the evaluations and findings of Charles Woodward, all of those criteria and factors set forth in the premises hereto, the comments of local citizens, consideration of those comments and reasons enunciated by the Board of Commissioners of this meeting of July 12, 1983, (and incorporated herein) and specifically, the Board does find and place particular emphasis upon the more favorable rates offered by RV Cable-Vision, Inc., the experience of RV Cable-Vision, Inc. and its demonstrated saturation and acceptance in other areas which it serves, its financial conditions, and apparent superior staffing offered by RV Cable-Vision, Inc.
 
 
 11
 After the franchise had been awarded to RV, CSI requested that the city create a second, overlapping franchise and award it to CSI. In response, the Commission held a public hearing on the issue on December 13, 1983. At that meeting, representatives of all concerned parties, including CSI and RV, were permitted to address the Commissioners. Thereafter, the Commission requested that Woodward prepare an evaluation of CSI's proposal. Woodward concluded that an overlapping franchise would have a detrimental impact upon the cable services available to the public. On January 9, 1984, the city denied a second, overlapping franchise to CSI.
 
 
 12
 On April 16, 1984, CSI commenced this action in federal district court naming as defendants the City of Danville, RV Cablevision and four individual members of the Danville Board of Commissioners. CSI's complaint alleged that the individual defendants conspired with the City to award the franchise to RV Cablevision in violation of both the Sherman Antitrust Act, 15 U.S.C. Secs. 1 and 2, and Section 164 of the Kentucky Constitution.
 
 
 13
 On January 9, 1985, plaintiff filed a motion for a preliminary injunction, seeking to set aside the Commission's award of the franchise to RV and to compel the Commission to award the franchise to CSI or, in the alternative, to compel the City to permit CSI to continue operating its cable television service in Danville after its franchise expired. On February 8, 1985, the district court denied the motion for preliminary injunction. CSI filed this timely appeal on March 5, 1985.
 
 
 14
 The standard of review on appeal from the grant of denial of a preliminary injunction is limited to a determination of whether the district court abused its discretion. Christian Schmidt Brewing Co. v. G. Heileman Brewing Co., Inc., 753 F.2d 1354, 1356 (6th Cir.), cert. dismissed, 105 S. Ct. 1155 (1985);American Motors Sales Co. v. Runke, 708 F.2d 202, 205 (6th Cir. 1983). A district court will be found to have abused its discretion if it relied upon clearly erroneous findings of fact, improperly applied the law, or used an erroneous legal standard. Christian Schmidt, supra.
 
 
 15
 In exercising its discretion in ruling on a motion for preliminary injunction, the district court must consider four factors:
 
 
 16
 (1) Whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits;
 
 
 17
 (2) Whether the plaintiff has shown irreparable injury;
 
 
 18
 (3) Whether the issuance of a preliminary injunction would cause substantial harm to others;
 
 
 19
 (4) Whether the public interest would be served by issuing a preliminary injunction.
 
 
 20
 Friendship Materials, Inc. v. Michigan Brick, Inc., 679 F.2d 100, 102 (6th Cir. 1982) citing Mason County Medical Association v. Knebel, 563 F.2d 256, 261 (6th Cir. 1977). The four factors do not establish a rigid and comprehensive test for determining the appropriateness of preliminary injunctive relief. Rather, the district court must engage in a realistic appraisal of all traditional factors weighed by a court of equity. Christian Schmidt, supra. Despite the overall flexibility of the preliminary injunction test, equity has traditionally required the presence of irreparable injury before granting a preliminary injunction. Friendship Materials, supra.
 
 
 21
 The district court applied the four part test stated above and concluded that all four factors weighed against issuing the injunction.
 
 
 22
 On appeal, CSI argued that it is likely to succeed on its claim that the city acted arbitrarily and capriciously in awarding the cable TV franchise to RV Cablevision, thus violating Section 164 of the Kentucky Constitution.
 
 
 23
 Section 164 of the Kentucky Constitution provides:
 
 
 24
 No county, city, town, taxing district or other municipality shall be authorized or permitted to grant any franchise or privilege, or make any contract in reference thereto, for a term exceeding twenty years. Before granting such franchise or privilege for a term of years, such municipality shall first, after due advertisement, receive bids therefor publicly, and award the same to the highest and best bidder; but it shall have the right to reject any or all bids. This section shall not apply to a trunk railway.
 
 
 25
 The Kentucky courts have interpreted this constitutional provision as preventing municipalities from granting a franchise arbitrarily, capriciously, in bad faith or fraudulently. Hatcher v. Kentucky & West Virginia Power Co., Inc., 133 S.W.2d 910 (Ky. 1939). However, in awarding a franchise for the public benefit, a city commission acts in a legislative capacity and is therefore, vested with substantial discretionary authority. Hatcher, 133 S.W. at 913.
 
 
 26
 In Baskett v. Davis, 223 S.W.2d 168 (Ky. 1949), the court noted that Section 164 of the Kentucky Constitution permits a legislative body to reject what appears on its face to be the highest bid and accept a lower one as the best bid if that body 'exercises a sound discretion and does not act arbitrarily or corruptly in doing so.' Where the commission's exercise of discretion is challenged in the courts, the reviewing court must presume that the City Board of Commissioners had not abused its discretion, but had acted with reason and in good faith for the benefit of the public. Id.
 
 
 27
 CSI urged that the entire bidding process was calculated to diminish its chances of securing the franchise and that the ultimate decision to award the franchise to RV was arbitrary and capricious. Defendants on the other hand countered that the City was not obligated to award the franchise to CSI on the basis of Woodward's recommendation and that the City's resolution stated rational reasons for awarding the franchise to RV.
 
 
 28
 Since the resolution, on its face, presents rational reasons for the legislative action at issue herein, this court cannot conclude that the district court abused its discretion in determining that CSI had not demonstrated a strong or substantial likelihood of success on the merits.
 
 
 29
 For the reasons stated above and for the reasons articulated by the trial court, the judgment of the district court is AFFIRMED.