**B.J. ALAN CO., INC., et al., Plaintiffs,**

v.

**UNITED PARCEL SERVICE, et al., Defendants.**

**No. C87–3498–Y.**

United States District Court,
N.D. Ohio, E.D.

Jan. 7, 1988.

William W. Falsgraf, Wayne C. Dabb, Baker & Hostetler, Cleveland, Ohio, Rhoda Smith Kibler, Robert King High, Jr., Ervin, Varn, Jacobs, Odom & Kitchen, Tallahassee, Fla., Sandra J. Strebel, Daniel I. Davidson, Spiegel & McDiarmid, Richard H. Streeter, Barnes & Thornburg, Washington, D.C., for plaintiffs.

Howard J. Nicols, Squire, Sampsey, Cleveland, Ohio, for defendants.

### ORDER

BATTISTI, Chief Judge.

Plaintiffs have come before this Court seeking a temporary order which will assure that the shipping services provided by United Parcel Service ("UPS"), a common carrier, prior to December 31, 1987 are continued during the pendency of a full review by the Interstate Commerce Commission ("ICC") of the lawfulness of Defendants' new tariff. As such, this Court has been called upon to assure that equity and justice is served in a matter which is coincidingly tracking through the ICC's administrative procedures.

A hearing was held in this Court on January 5, 1988. Counsel for both sides ably presented the legal and equitable considerations at issue here.

On November 24, 1987, Defendants filed a proposed tariff with the ICC which provided that:

Common fireworks as defined in Department of Transportation Hazardous Material Regulations, 49 C.F.R. 173.100(r), will not be accepted by the carrier for transportation.

Over protest by Plaintiffs filed December 16, 1987, the ICC determined on December 28, 1987 not to suspend the tariff pending final ICC action on the matter. 49 U.S.C. § 10708. On December 31, 1987, this determination was upheld upon review within the ICC by a panel of five which split the decision two in favor of suspension, two opposed and one not participating in the vote. Therefore, the tariff took effect on January 1, 1988 when UPS refused to accept parcels containing common firework. This tariff will be devastating on Plaintiffs. It has already begun to cause significant impairment of their businesses, financial ruin, and loss of goodwill. Even more importantly, this tariff will necessitate contraction of operations and ultimately the discharge of hundreds of employees. To avoid these consequences, Plaintiffs have expressed their intent to fully pursue a complaint and determination from the ICC pursuant to 49 U.S.C. §§ 10701–10708. But, because of the impending unique and great harm, Plaintiffs have urged two bases for evaluation in determining whether this court should grant temporary relief pending the ICC's determination.

Plaintiffs urge injunctive relief through an order either staying implementation of the tariff or ordering Defendants to take the steps necessary to return to the full carrier service existing before the effective date of the new tariff. It is notable, however, that Plaintiffs' request for stay of implementation would draw this court precariously close to interference with matters exclusively reserved to the ICC since their non-final orders are not subject to judicial review. *Southern Ry. v. Seaboard Allied Milling Co.*, 442 U.S. 444, 99 S.Ct. 2388, 60 L.Ed.2d 1017 (1979).

Although the effect of a federal court order may appear, at first blush, to be a judicial review of the ICC's suspension decision, in reality that is not the case in all instances. When strong equitable and public interest considerations cry out for some relief, a court should assure that unnecessary harm is avoided by merely maintaining the status quo while the matter proceeds before the ICC, without contravening either the ICC's primary jurisdiction or its authority to issue interlocutory orders without judicial review. *Murry Ohio Mfg. Co. v. Louisville & Nashville R.R.*, 496 F.Supp. 179 (M.D.Tenn.1980). The national policy behind the ICC's primary jurisdiction in this area is efficiency and consistency, not unfettered disregard for the rights of people to be served in the public

interest. The primary jurisdiction of the ICC to make factual determinations with respect to the tariff is not at issue here. The ICC's statement and position on this matter, set forth in Defendants' Second Supplemental Memorandum in Opposition, that "Court action in such circumstances, even in the face of a showing of irreparable injury, and even if the tariff at issue is patently unlawful, would undermine the doctrine of primary jurisdiction an[d] finality" demonstrates the need for the survival of a federal court's equitable power to prevent the ICC from triggering a manifestly unjust result when no harm would come from delay in the imposition of a tariff.

Plaintiffs ask for no more than a temporary continuation of the same services which Defendants have provided for the past ten years since, in the exercise of what appears to be a cruel and discriminatory move, UPS ceased these important services. This, Plaintiffs assert, also gives rise to their second cause of action namely breach of the common law duties which all common carriers bear. *See Pensick & Gordon, Inc. v. California Motor Express,* 302 F.2d 391 (9th Cir.1962), *modified on remand,* 323 F.2d 769 (9th Cir.1963), *cert. denied,* 375 U.S. 984, 84 S.Ct. 517, 518, 11 L.Ed.2d 472 (1964). The arbitrary and capricious actions allegedly taken by UPS to terminate transportation of part of one class of explosives, common fireworks, while continuing to carry other explosives in the same class, would seem to constitute an impermissible refusal by a common carrier to accept and transport freight. *Id.* at 323 F.2d 771. This common law cause of action, properly brought pursuant to 28 U.S.C. § 1332, equally enables the Court to maintain the status quo pendente lite.

The possibility that a preliminary injunction may proceed upon the common law cause of action raises consideration of another aspect of this Court's interaction with the ICC, specifically whether this Court has the right to make these factual determinations perhaps more appropriately made within the domain of the ICC. Clearly the doctrine of primary jurisdiction is applicable here where resolution of issues which fall within the "special competence of an administrative body" is required. *United States v. Western Pacific R.R.,* 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). A determination to refer the matter to the ICC, however, is premature at this juncture. Such a determination will be timely if, subsequent to an evidentiary hearing, this Court grants a preliminary injunction founded on Plaintiffs' claims.

■ It appears, from the arguments and briefs presented by counsel, that Plaintiffs' request for a temporary restraining order may be granted. The four point test applicable in this Circuit for the granting of temporary injunctive relief has been satisfied so as to merit relief pending disposition pursuant to a full hearing. *See In re DeLorean Motor Co.,* 755 F.2d 1223, 1228–30 (6th Cir.1985) (discussing the standards commonly employed in determining fulfillment of the requirements for temporary injunctive relief). The potential injury to Plaintiffs in this instance is severe while, in contrast, the burden on Defendants from the granting of relief is de minimis. Defendants have not established that they are harmed in any significant way by having to continue to ship packages containing fireworks. In fact, nothing appears to indicate that they will not profit from this brief continuation of service. Plaintiffs, on the other hand, stand to suffer extensive, irreparable injury. The granting of injunctive relief here is clearly in the public interest, particularly in light of the hundreds of jobs represented to be at stake.

The final consideration required before granting this temporary relief is whether plaintiff has shown a likelihood of success on the merits. Defendants have naturally asserted that cases which require a strict showing should be applied. *See, e.g., Mason County Medical Ass'n v. Knebel,* 563 F.2d 256 (6th Cir.1977). Conversely, Plaintiffs assert that when, as here, merely serious questions running to the merits of the case exist, and irreparable harm will result during the pendency of the action, a lesser showing should be required. *See, e.g., Friendship Materials, Inc. v. Michigan Brick, Inc.,* 679 F.2d 100 (6th Cir.1982). On balance, factors here militate so strongly to the Plaintiffs' side in light of the

potential harm caused by denial of relief vis-a-vis the miniscule burden imposed on Defendants by imposition of the injunction. This Court therefore finds the requirements for relief to have been satisfied.

It is the duty of this Court to assure that equity is done. Recognizedly, Defendants have followed the law with respect to approval and implementation of their tariff. However, the legal procedures employed here have, in reality, imposed as dreadful a result as that which obtains when a monopolistic common carrier employs predatory and discriminatory means against unfavored shippers. When the law is unable to serve justice, equity must.

Accordingly, it is hereby ordered that Defendants, by Monday, January 11, 1988, shall take all steps necessary to return to servicing the shipment needs of Plaintiffs, including delivery of all items which UPS was permitted to carry under the tariff in force prior to December 31, 1987. Furthermore, Defendants may not (as allegedly occurred prior to implementation of the tariff now in effect) threaten to or in fact return to the shipper any packages duly tendered to UPS. Pursuant to Fed.R.Civ. P. 65, and for good cause shown, this temporary restraining order is extended an additional ten days and a hearing for the preliminary injunction is hereby scheduled for January 26, 1988 at 10:00 a.m.

IT IS SO ORDERED.