**HYPOINT TECHNOLOGY, INC., Plaintiff,**

v.

**HEWLETT–PACKARD COMPANY, Defendant.**

No. C87–2484.

United States District Court, N.D. Ohio, E.D.

Feb. 24, 1988.

Phillip J. Campanella, John J. Eklund, Calfee, Halter & Griswold, Cleveland, Ohio, Ronald J. Katz, Robert A. Christopher, Kurt E. Wilson, Coudert Brothers, San Jose, Cal., for plaintiff.

Leslie W. Jacobs, Mark F. Kennedy, Thompson, Hine & Flory, Cleveland, Ohio, C. Coleman Bird, Robert A. Skitol, James A. Meyers, Pepper, Hamilton & Scheetz, Washington, D.C., for defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

KRENZLER, District Judge.

The plaintiff, Hypoint Technology, Inc. ("Hypoint"), initiated the above-captioned action by filing a complaint against the defendant, Hewlett–Packard Company ("Hewlett–Packard"), alleging that Hewlett–Packard is in violation of 15 U.S.C. § 2 (monopolization and attempt to monopolize). Additionally, the plaintiff alleges the pendent state claim of intentional interference with contracts, lawful business, and economic advantage. Hypoint also filed a motion for a preliminary injunction requesting injunctive relief, pursuant to 15 U.S.C. § 26 (injunctive relief for private parties). Hewlett–Packard filed an answer to the plaintiff's complaint generally denying the allegations contained in the complaint.

The complaint alleges the following facts. Defendant, Hewlett–Packard, a California corporation, is a designer and manufacturer of computer hardware and software. Additionally, Hewlett–Packard operates a maintenance program. Complaint, ¶ 8. Hypoint, an Ohio corporation, is a third-party maintenance firm, which "participates in the business of maintaining

[Hewlett–Packard] systems by entering into service contracts with users of [Hewlett–Packard] systems." Complaint, ¶ 9.

The complaint also alleges that Hypoint does not maintain its own inventories or employ its own service engineers. When a customer of Hypoint needs service, Hypoint "arranges and pays for a [Hewlett–Packard] customer engineer to perform the service on a time and materials basis." Complaint, ¶ 9. The complaint states that between 1978 and 1983, Hewlett–Packard made its products and support services available to all of its customers, including third-party maintenance firms, "on equal and nondiscriminatory terms with respect to price, delivery and technical assistance." Complaint, ¶ 11. In 1983, certain services provided by Hewlett–Packard were refused to customers, designated as "independent service organizations" including the plaintiff, Hypoint. Complaint, ¶ 13.

Effective on August 1, 1987, Hewlett–Packard stated that it would discontinue the "four-hour response lift" service at any price, to anyone other than a party to a Hewlett–Packard service contract. Complaint, ¶ 19. The "four-hour response uplift," is "in effect ... guaranteed same-day service response available to customers who are willing to pay a substantial additional fee." Complaint, ¶ 4. Hypoint states that as a result of Hewlett–Packard's actions it has lost or has been prevented from obtaining maintenance contracts.

The plaintiff's motion for a preliminary injunction came on for a hearing before this Court. Counsel for the plaintiff and counsel for the defendant argued for and against the motion for a preliminary injunction, respectively. Additionally, the plaintiff and the defendant submitted numerous exhibits, declarations, affidavits and depositions in support of their positions.

In considering the plaintiff's motion for a preliminary injunction, this Court weighed the evidence submitted to it, including:

*In Support of the Motion for a Preliminary Injunction:*

Declaration of Donald F. Blumberg, President of D.F. Blumberg and Associates, Inc.; Declaration of J. Michael Mason, President of Hypoint; Declaration of Raymond C. O'Connor, Director of Datagate, Inc.; Declaration of James J. Moran, a programmer/analyst for Deltech; Declaration of Duane Bluemke, President of U.S. Counseling Services, Inc.; Declaration of Nicholas Ward, President of Technical and Scientific Application, Inc.; Declaration of Alan Gibson, President of Amtek Computer Systems; Declaration of Ronald S. Katz, attorney at law, co-counsel for Hypoint and counsel for Datagate, Inc.; Declaration of Terrence L. Fleischer, National Sales Manager for Hypoint; Declaration of James Richard Griffin, President of Maintenance Control Corporation; and Declaration of Bruce D. Lisle, President of Atlantic Tech Services, Inc.

*In Opposition to the Motion for a Preliminary Injunction:*

Declaration of Roger Costa, General Manager of the Product Support Division of Hewlett–Packard; Declaration of James A. Meyers, co-counsel for Hewlett–Packard; Affidavit of David M. Carver, Computer Support Marketing Manager for Hewlett–Packard; Affidavit of Stephen P. Davis, Manager of Customer Service Systems Engineering for Digital Equipment Corporation; Affidavit of Roger G. Noll, Professor of Economics and Director of the Public Policy Program at Stanford University, Stanford, California; Declaration and Affidavit of Paul H. Lawrence, President of Ideal Computer Services; and Declaration of Tracy Russel, District Service Manager, Computer Systems, for the Hewlett-Packard District Office in Richardson, Texas.

Additional evidence, including materials filed as confidential, pursuant to the Consent Protective Order, October 28, 1987, was considered by this Court in determining whether to grant the plaintiff's motion for a preliminary injunction.

There are four general factors to be considered in determining whether a preliminary injunction is proper:

(1) the likelihood of plaintiff's success on the merits;

(2) whether the injunction will save the plaintiff from irreparable injury;

(3) whether the injunction will harm others; and

(4) whether the public interest would be served by the injunction.

*In re DeLorean Motor Company,* 755 F.2d 1223, 1228 (6th Cir.1985). These four factors are to "be balanced" and are not "prerequisites that must be met." *Id.* at 1229.

This Court, following consideration of the exhibits, affidavits, depositions, and declarations submitted to the Court, the applicable law, and the oral arguments of counsel for the parties, hereby grants the plaintiff's motion for a preliminary injunction.

Hypoint, through evidence submitted to this Court, has demonstrated that at a minimum, there are "serious questions going to the merits" of the present case, *Friendship Materials, Inc. v. Michigan Brick, Inc.,* 679 F.2d 100, 105 (6th Cir.1982). Hypoint has given a very strong presentation of evidence which demonstrates that unless a preliminary injunction is issued, Hypoint will suffer irreparable harm. Numerous declarations and affidavits state that the inability of Hypoint to offer the four-hour response uplift has caused Hypoint's clients to seek maintenance contracts with other companies, including Hewlett-Packard, and will effectively halt any other clients from entering maintenance contracts with Hypoint. Thus, the viability of Hypoint's existence is at stake.

The harm to others, particularly Hewlett-Packard and its clients, will be minimal, if any harm exists at all. Hewlett-Packard shall not be required to "subsidize" Hypoint. Hewlett-Packard is not precluded from charging Hypoint the market price for the services which it provides. Finally, the granting of the preliminary injunction is in the public interest in preserving the status quo of the parties until a decision on the merits can be reached.

Accordingly, the defendant, Hewlett-Packard, is hereby enjoined from:

(1) refusing or failing to provide to the plaintiff and to such of plaintiff's customers as plaintiff first identifies, in writing, its four-hour response uplift service, on the same terms and conditions, excepting the price, as was formerly in effect prior to August 1, 1987. Defendant, Hewlett-Packard, is not precluded from charging the market price for said services.

(2) advertising, promoting, or otherwise representing to potential service customers either that they will or may enjoy access to same-day maintenance services only if they purchase a service contract from Hewlett-Packard, or that Hypoint is unable to, or may in the future be unable to, procure access to such services.

IT IS SO ORDERED.