**INTEGRITY INTERNATIONAL
SECURITY SERVICES,
INC., Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF
the ARMY, et al., Defendants.**

**No. 3:94–0902.**

United States District Court,
M.D. Tennessee,
Nashville Division.

Dec. 15, 1994.

Larry B. Watson, Watson, Atkins & Hay, Clarksville, TN, Jeffrey J. Pargament, Andrew P. Hallowell, Piliero, Mazza & Pargament, Washington, DC, for plaintiff.

## MEMORANDUM

WISEMAN, District Judge.

Plaintiff filed a complaint alleging that defendants acted in bad faith, arbitrarily, and capriciously when refusing to award a Section 8(a) contract to plaintiff for security and law enforcement services. Plaintiff is now seeking a preliminary injunction to maintain its eligibility as a Section 8(a) firm pending resolution of the merits of its case. This Court hereby denies plaintiff's motion for preliminary injunction because this Court is unable to conclude that there is a likelihood of success on the merits or irreparable injury to the plaintiff if the injunction is not granted.

## I

Plaintiff, Integrity International Security Services, Inc. ("Integrity"), is a Tennessee corporation with its principal place of business in Clarksville, Tennessee. Integrity's

president and majority shareholder is R.O. Rivera, a Hispanic. In the mid 1980's, the Small Business Administration ("SBA") determined that Integrity was socially and economically disadvantaged for purposes of participating in set-aside programs for minority-owned businesses, including the SBA's Section 8(a) program. Integrity has been a participant in the 8(a) program since November 13, 1985 when it received its first 8(a) contract. Integrity is scheduled to graduate from the 8(a) program in November 1994.[1]

In 1987, Integrity pursued a federal contract for security and law enforcement services at U.S. Army Kwajalein Atoll, Republic of the Marshall Islands as an 8(a) set-aside from the United States Department of the Army, Space and Strategic Defense Command ("SSDC"). SSDC, however, awarded the contract to a different company, Am–Pro Corporation ("Am–Pro"). The Am–Pro contract will expire on October 1, 1995, and SSDC anticipates that another contractor will begin performance under a new contract on that date. Integrity, along with many other companies, seeks this new contract which is valued at approximately 70 million dollars over a ten year period.

Integrity formally requested that it be considered for an 8(a) set-aside contract at the Kwajalein, but on June 29, 1994, SSDC decided to remove the 1995 Kwajalein contract from the 8(a) program. Integrity requested reconsideration of the decision but SSDC refused. SSDC articulated the following reasons for its decision: it preferred competition over an 8(a) sole-source award to Integrity, and Integrity's November 1994 Section 8(a) graduation date precludes a sole-source 8(a) award.

Integrity filed a complaint on October 14, 1994 against defendant SSDC. Integrity alleges SSDC acted in bad faith, arbitrarily, capriciously, and irrationally when it

1. Scheduled the contract award date for June, 1995, allowing only three months preparation time before performance on the contract is to begin, as a pretext to

---

1. The United States Department of the Army, Space and Strategic Defense Command states that Integrity will be a graduate of the 8(a) program as of November 12, 1994. Integrity claims the proper date is November 30, 1994.

preclude Integrity from eligibility as an 8(a) business;

2. Concluded that Integrity did not qualify as an 8(a) firm, authorized to receive government contracts without competition from similar companies;

3. Improperly removed the Kwajalein security contract from 8(a) non-competition status to small business competitive status;

4. Improperly and inexplicably extended the prior contract for these services with a competitor on two occasions; and

5. Improperly allowed a retired government employee to become employed by a competitor.

## II

Integrity is seeking a preliminary injunction to maintain its status as an 8(a) firm pending resolution of the merits of its claims, asserting that the injunction is necessary to maintain plaintiff's eligibility to receive the Kwajalein contract. Integrity's scheduled graduation date from the Section 8(a) program is November 1994, and it exceeds the applicable size standard required for the company to be considered "small" under an 8(a) procurement as of October 31, 1994. Therefore, plaintiff asks this Court 1) to enjoin the Administrator of the SBA from graduating plaintiff from the 8(a) program solely with respect to the 1995 Kwajalein requirement for security and law enforcement services; and 2) to enjoin the Administrator of the SBA and the Secretary of the United States Department of the Army from denying plaintiff's size eligibility for the 1995 Kwajalein requirement for security and law enforcement services. As grounds for granting the preliminary injunction, plaintiff alleges it will suffer irreparable harm otherwise, and that it has a substantial likelihood of success on the merits of the case.

 Judicial intervention into the contract process by federal agencies should be exercised with great restraint, and a preliminary injunction should be granted only in extraordinary circumstances. The Sixth Circuit has set forth four factors a court should consider when a plaintiff asks for a preliminary injunction:

(1) Whether the plaintiff has shown a strong or · substantial likelihood or probability of success on the merits;

(2) Whether the plaintiff has shown irreparable injury;

(3) Whether the issuance of a preliminary injunction would cause substantial harm to others; and

(4) Whether the public interest would be served by issuing a preliminary injunction.

*Mason County Medical Assn. v. Knebel,* 563 F.2d 256, 261 (6th Cir.1977). Integrity cites *DeLorean Motor Co. v. John Z. DeLorean,* 755 F.2d 1223 (6th Cir.1985), to support its position that this Court may grant an injunction when the plaintiff shows serious questions going to the merits as well as irreparable harm that outweighs any potential harm to the defendant. 755 F.2d at 1229 (citing *Friendship Materials, Inc. v. Michigan Brick, Inc.,* 679 F.2d 100, 105 (6th Cir.1982)). In *DeLorean,* the court stated that such a standard was particularly appropriate when a preliminary injunction is necessary to preserve the situation for investigatory purposes. *Id.* That case, however, is distinctly different from the one at hand: it involved a bankruptcy case in which the disposition of proceeds of the sale of assets or stock of a company allegedly had been acquired with assets that could ultimately be traced back to the debtor.

### A. *Likelihood of Success on the Merits*

Integrity has not shown that there is a substantial likelihood that it will prevail on the merits of this case. First, SSDC did not set its contract award date arbitrarily but in the same manner as it has done in the past. Second, the timing of the contract prohibits Integrity from participating as an 8(a) firm because they ceased to be an 8(a) firm upon graduation in November 1994; they ceased to be a small business on October 31, 1994; and in the past they have never met the mandated competitive mix. Finally, SSDC's decision to allow competition is not arbitrary, capricious, or in bad faith.

### 1. Scheduling of the Contract Award Date

■ Integrity has not shown a substantial likelihood of success on the merits in proving that SSDC improperly decided to award this contract ninety days prior to performance. The Administrative Procedure Act provides that a reviewing court shall hold unlawful and set aside an agency action found to be arbitrary, capricious, abusive of discretion, or otherwise not in accordance with the law. 5 U.S.C. §§ 702, 706(2)(A). Integrity has not presented any evidence that SSDC abused its discretion in deciding to award this contract three months prior to the expiration of the current one. SSDC has scheduled the timing of this contract exactly as it has on each of the three preceding contracts.[2] There is no reason to award the contract earlier because all of the equipment used by the contractor is furnished by the government, the winning contractor will need to recruit only three key personnel, and the three prior contractors have transitioned successfully into their contracts within ninety days or less.[3]

### 2. Integrity's Status as an 8(a) Firm

■ To show a substantial likelihood of success on the merits, Integrity must show that it would be eligible to receive 8(a) contracts. Integrity asserts that SSDC acted arbitrarily, capriciously, and in bad faith when it concluded that Integrity did not qualify as an 8(a) firm for purposes of this contract. Integrity notes that to be eligible to perform an 8(a) sole-source contract, an 8(a) firm need only be a program participant on the date of contract award. See 13 C.F.R. 124.209(c). The evidence indicates, however, that Integrity will be ineligible at the time of the contract award, June 1995, because it will have graduated from the 8(a) program, will exceed the program's size requirements, and has failed to meet the required competitive mix.

Integrity is scheduled to graduate seven months before the contract is awarded. Under the terms of the Small Business Act in effect at the time, a small business could remain in the 8(a) program for a maximum of nine years from the date of its first 8(a) contract.[4] SSDC argues that after November 12, 1994, by the terms of the law, Integrity no longer will be eligible for 8(a) contracts in any form because Integrity received its first 8(a) contract on November 13, 1985.

Integrity also is not a small enough business to be eligible for an 8(a) contract to be awarded in June of 1995. Until recently, a small business was defined as one with less than six million dollars in annual revenues, averaged over the past three fiscal years with fiscal years ending on October 31. Because Integrity's revenues over the previous three years exceeded six million dollars annually, Integrity was suspended from participation in the program by the SBA on October 31, 1992. It remained in suspension status until April 22, 1994 when Congress amended the definition of a small business as one receiving less than nine million dollars in annual revenues per year, averaged over the past three years. Integrity reported annual

---

**2.** SSDC states that Washington Patrol Company, which performed the contract from 1980–84, signed their contract on October 1, 1980 and began performance on October 1, 1980 with no overlap or phase-in period; EC Corporation, which performed the contract from 1984–88, signed their contract on July 25, 1985 and began performance on October 1, 1984 with a 60 day phase-in period; Am–Pro Corporation, the present contractor, did not sign its contract until September 26, 1988 with performance beginning on October 1, 1988 and calling for a 90 day phase-in period beginning July 1, 1988. Am–Pro, however, was aware of the award eleven months in advance during which time they could begin preparations for the contract.

**3.** SSDC also states that a one year phase-in period is unnecessary to obtain personnel willing to travel to the South Pacific to work or to obtain and ship necessary equipment to this remote site because, as Integrity knows from having visited the site, all equipment, including motor vehicles, boats, office space, office equipment, drug dogs and their kennels, weapons, and even housing for contractor key employees are provided by the government. Additionally, SSDC notes that the vast majority of all the employees performing the current contract are Marshall Island natives or dependents of American military personnel stationed there who can be hired by the new contractor to perform the same jobs they currently hold.

**4.** That limit of nine years also applies under the current statute. See 15 U.S.C. § 636(j)(10)(C)(i), § 636(j)(10)(E)(ii), § 636(j)(15).

revenues to the SBA of $9,421,522 for the year ending October 31, 1992; $8,398,244 for the year ending October 31, 1993; and approximately $7.2 million for the nine months ending July 31, 1994 (projected $9.6 million for the fiscal year). Thus, Integrity is ineligible for participation in the 8(a) program or in any small business program as of October 31, 1994. Integrity's only period of eligibility for the past two years has been the period from April 22, 1994 to October 31, 1994.

Finally, Integrity has failed to meet the competitive mix required to receive 8(a) contracts. SBA regulations require 8(a) firms in their fourth year of participation since 1990, such as Integrity, to receive 45% to 55% of their revenues from competitive contracts before any further 8(a) sole source awards will be made to them. 13 C.F.R. § 124.312(c)(4). SSDC states that throughout this entire fiscal year, less than 15% of Integrity's revenues have come from competitive contracts. SSDC also claims that the Army Corps of Engineers attempted to award a contract to Integrity in June 1994 but that this offer was denied by SBA because Integrity did not meet its competitive mix requirements.

Integrity will graduate from the 8(a) program several months before the contract award date; Integrity will be ineligible because of its size; and Integrity has failed to meet its mandatory competitive mix. Therefore, Integrity's assertion that defendants have abused their discretion by finding that Integrity does not qualify as an 8(a) firm for the Kwajalein contract is without merit.

### 3. *SSDC's Decision to Allow Competition for the Contract*

■ The decision to allow competition for the contract is not an abuse of discretion because SSDC complied with the law. SSDC is required by 15 U.S.C. § 637(a)(1)(D)(i) to allow competition for a contract if its value exceeds three million dollars. This provision requires competition among 8(a) firms if there is more than one qualified 8(a) firm available to perform the contract. When there is only one 8(a) firm available to per-

form such a contract, then the SBA is authorized to make a sole source award to that 8(a) firm. 13 C.F.R. 124.311(e). In this case, however, no other 8(a) firms have shown interest in the contract,[5] and Integrity will not be a qualified 8(a) firm at the time of the award. The Kwajalein contract is valued at seventy million dollars over a ten year period and therefore falls within this statutory provision that requires competition.

Furthermore, the decision to remove a contract from 8(a) status is entrusted to agency discretion. 15 U.S.C. § 637(a). The Comptroller General has ruled that agency discretion is so broad that there is no requirement for an agency to conduct 8(a) acquisitions on a repetitive basis. *Stephens Engineering Company, Inc.*, Comp.Gen.Op. B-247601, June 22, 1992, 92–1 CPD ¶ 538. SSDC has concluded that the size of this contract combined with the fact that Integrity fails to meet the requirements to be eligible as an 8(a) firm, justifies SBA's decision to allow competition. SSDC's decision to remove the contract from the 8(a) program based on Integrity's size and the lack of interest by other qualified 8(a) firms deserves judicial deference because plaintiff has failed to show that this decision was made arbitrarily, capriciously, or in bad faith.

### B. *Substantial Threat of Suffering Irreparable Harm*

■ Next Integrity claims that there is a substantial threat that it will suffer irreparable harm unless the preliminary injunction is issued. Integrity claims that without the preliminary relief, it will be eliminated from consideration for the 1995 Kwajalein contract. Plaintiff argues that the threatened loss of a government contract is sufficient to meet the irreparable harm requirement because the offeror is without a remedy against the federal government to recover lost profits under the contract, citing *Bean Dredging v. United States*, 22 Cl.Ct. 519 (1991). In that case, however, plaintiff was seeking to enjoin the agency awarding the contract rather than an agency establishing a particu-

---

5. In January of 1994, SSDC advertised the 1995 Kwajalein contract opportunity in the Commerce Business Daily for the purpose of determining whether any small disadvantaged firms were capable of performing the contract. No 8(a) firm responded.

lar status. Furthermore, the District of Columbia Circuit Court has held that to support the injunctive relief for the threatened loss of a government contract sought by Integrity, it must clearly convince the court that "but for the illegal behavior of the agency, the contract would have been awarded to the party asking the court to order the award." *Delta Data Systems. v. Webster,* 744 F.2d 197, 204 (D.C.Cir.1984). Integrity has failed to show either illegal behavior or irreparable harm. Finally, Integrity will be able to compete for the contract with other contractors: although Integrity will be considered a large business when the request for proposals is issued on this contract, it can subcontract with a small business for 50% of the work.

Integrity cites an unpublished case, *Andrulis Research Corp. v. United States Small Business Administration,* 1990 WL 169318, attached as plaintiff's exhibit G (District of Columbia District Court October 19, 1990), to support its propositions 1) that irreparable harm is shown when a company is no longer eligible for the contract in question after its 8(a) graduation and 2) that this Court has authority to extend Integrity's graduation date and size eligibility.[6] In the *Andrulis* case, the SBA caused the improper delay in the contract award by refusing to allow the Navy and plaintiff, an 8(a) company that was nearing graduation from the program, to continue their negotiations. The court extended plaintiff's 8(a) graduation date by ten days to allow the SBA and the contractor to complete their administrative proceedings. That court noted that a district court does have the power to extend statutory deadlines to remedy improper agency delay and found that the SBA was guilty of arbitrary and capricious conduct. This clearly is not the situation here in which plaintiff seeks extension of both 8(a) and size eligibility for ten months and has failed to show any arbitrary or capricious activity on the part of the SBA.

Finally, if the Court has the authority to extend Integrity's graduation date now, then after sufficient proof, it also has the authority to rescind a graduation date that was im-

posed on Integrity to prevent it from obtaining the contract in bad faith.

### III

For the reasons stated above, plaintiff's motion for preliminary injunction is denied.

It is so ORDERED.

---

6. Integrity argues that GAO decisions are advisory in nature and are not controlling precedent, citing *Shoals American Industries, Inc. v. United States,* 877 F.2d 883 (11th Cir.1989).